**Fred KEOWN, Appellant,**

v.

**Charles KEOWN, Appellee.**

Court of Appeals of Kentucky.

Oct. 15, 1965.

Reginald L. Ayers, Bell, Orr & Reynolds, Bowling Green, for appellant.

G. D. Milliken, Jr., Milliken & Milliken, Bowling Green, for appellee.

STEWART, Judge.

This appeal is from a judgment of $5000 recovered as damages by Charles Keown, the son, from Fred Keown, the father, for injuries received by the son as a result of a fall in a tub-shower enclosure in the father's house.

A summary of the pertinent facts in this case is that appellee, Charles Keown, age 25, whose residence is Nashville, Tennessee, paid a visit to his father, appellant herein, in Bowling Green, arriving at the latter's home on September 22, 1963, at around

9 a. m. Some three weeks prior to this date appellant had completely remodeled his bathroom and, in doing so, had installed a new bathtub with a shower attachment. Two sliding doors of transparent glass enclosed the tub-shower.

Shortly after arriving at his father's home, the son allegedly remarked in the presence of his father that he was going into the bathroom and take a shower. Appellee had been in the new bathroom on a previous occasion and had observed it but reportedly had not used the bathtub or the shower. Marie Keown Jones, a married daughter of appellant who with her husband was living with her father, testified she had cleaned the bathtub on the evening before. She had on that occasion turned the bath mat over in the tub to dry, leaving the bottom of the mat, where there were small suction cups, turned upward.

The bathroom was sufficiently lighted when appellee entered it to take a shower, so that he could see without difficulty the inside of the bathtub and the position of any article that lay on the bottom of it. It is not claimed the light factor had any connection with his falling. He stated he did not check the bath mat before getting into the tub; he merely closed the glass doors on the side of the tub and turned on the shower. Testimony was introduced to the effect that the mat was practically new.

Appellee began to lather himself with soap. He slipped a little in the tub but did not fall. From five to ten minutes later he slipped again and, according to his testimony, fell and "went through the door." Appellee was seriously injured to the extent of 75% permanent impairment of the use of his left arm.

Appellee's deposition was taken before the trial. When asked at that time what caused his mishap, he answered: "I just slipped. I started to bend over and when I did I slipped and that's all I remember until I was in the hospital." Upon the trial of his case, on direct examination and also on cross-examination, he gave these explana-

tions as to how the accident happened: "I can't tell you. * * * All I know is my feet came out from under me." This question was put to him on direct examination: "What happened to the bath mat?" He responded: "I don't know, sir."

After three other witnesses had testified and a recess had been called, appellee was recalled for additional direct testimony over the objection of counsel for the defense. We quote the following from his testimony given at that time:

"Q. 15. Do you know what caused you to slip and fall?

A. The mat slipped.

Q. 16. What is that?

A. The mat slipped.

Q. 17. Slipped out from under you?

A. Yes, sir."

When cross-examined, this testimony was elicited by counsel for the defense:

"Q. 18. Since I examined you, have you had a conference with your attorney?

A. We had a talk."

Appellee contends his fall was directly caused by the slipping of the bath mat. His argument in this connection is that, because this mat was laid in the tub with the suction cups up, this position created a condition of danger to anyone standing on it while taking a shower. Furthermore, he maintains that this upside-down placing of the mat in the tub under the circumstances exposed him to a hidden or latent risk which culminated in the injuries he received. He asserts the condition of the mat was unknown to him, but that his father knew about it and should have warned him it was unsafe.

■ The father-son relationship in the case at bar made the son a social visitor and therefore a licensee in his father's home at the time he was injured. It has been

held in such a situation that a social visitor occupied the same status as a member of the household, that he took the premises as the owner used them, and that he could not expect precautions would be taken for his safety which were not likewise taken for the owner's safety. See Terry v. Timberlake, Ky., 348 S.W.2d 919.

On the occasion of appellee's taking a shower, the bathroom was new and clean; and the lighting in it was adequate for observing through the sliding glass doors any object that was placed in the tub. Appellee stated that when he got in the tub he did not notice that the cups on the mat were up. He admitted he had seen and used at other times mats of the type under consideration.

 This Court has held there is no duty to warn a person lawfully on the premises of an occupant or owner of any defect or danger thereon which is as well known to that person as to the occupant or owner, or which is obvious or which should or could be observed by that person in the exercise of ordinary care. See Fisher v. Hardesty, Ky., 252 S.W.2d 877.

In the instant case appellee had only to use his eyes to ascertain whether the cups were turned up on the mat. More than that, when he stood barefoot on the mat it is almost unbelievable that he could not feel the cups press against the soles of his feet. It is our view appellee's knowledge of the condition of the mat was equal to that of his father. Stated differently, he was in a position to know as much as his father could have told him concerning the correct manner in which the bath mat should be placed in the tub.

Appellee testified he entered the tub-shower enclosure, turned the water on, lathered himself with soap, and then slipped a little bit but did not fall. Five or ten minutes later he slipped and fell. Certainly, when appellee slipped a little the first time he was put on guard that a condition existed that might result in an accident. He should have at that time investigated the cause of his slipping. Every person has a continuing duty of caution for his own safety, and it is evident that appellee himself was guilty of not using proper care for his own safety under the facts presented.

No witness testified how the mat was turned after appellee's fall or where it was. Every person who has ever taken a shower or bath in the modern-day bathtub knows that the slick and smooth surface of the tub when it comes in contact with water and soap produces a slippery condition that requires carefulness on the part of the bather. It has been said that more accidents take place in a bathroom than in other portion of the house.

We conclude there is no showing that appellant violated any duty owed appellee as a social visitor in his home. The motion for judgment notwithstanding the verdict should have been sustained.

Wherefore, the judgment is reversed with direction to enter a new one for appellant.