**Russell RICHARDSON, Appellant,**

v.

**The COMMODORE, INC. d/b/a The Commodore Tap, Ralph W. Hauerwas and Betty L. Hauerwas, Appellees.**

No. 97–1829.

Supreme Court of Iowa.

Sept. 9, 1999.

Hugh G. Albrecht and Anne Updegraff of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Roger A. Lathrop and Peter J. Thill of Betty, Neuman & McMahon, L.L.P., Davenport, for appellees.

Considered by LARSON, P.J., and CARTER, SNELL, TERNUS, and 'HARRIS,* JJ.

TERNUS, Justice.

Appellant, Russell Richardson, was injured at a bar owned and operated by the defendants/appellees when a portion of the ceiling fell on him. His suit against the defendants was dismissed on their motion for summary judgment. The court of appeals affirmed. On further review, we find sufficient evidence to create a jury question on Richardson's premises liability claim. Therefore, we vacate the court of appeals decision and reverse the judgment of the district court, remanding for further proceedings.

## I. *Background Facts and Proceedings.*

We view the facts in a light most favorable to the nonmoving party, Richardson. *See Shriver v. City of Okoboji,* 567 N.W.2d 397, 400 (Iowa 1997). The record shows that, at the time of Richardson's injury, The Commodore Tap was a bar operated by the appellee, The Commodore, Inc. Appellees Ralph and Betty Hauerwas owned the corporation as well as the building in which the bar was located.

The accident giving rise to this action occurred on September 12, 1994. While shooting pool at the bar on that date, Richardson was suddenly struck by falling plaster. Richardson thereafter brought this action against the defendants to recover damages for his physical injuries. Richardson's claim was based on a theory of premises liability. He alleged that he was a business invitee and the collapse of the ceiling and his resulting injuries were caused by the defendants' negligence in failing to maintain the premises in a reasonably safe condition.

The record shows that the building that housed The Commodore Tap was built in 1913. Ralph and Betty Hauerwas acquired the building in 1982, and subse-quently moved their tavern business into it. The tavern was on the first floor of this two-story building. Prior to opening for business, the Hauerwases contracted with Wayne Blumer to repair portions of the plaster ceiling of the first floor where the wood lath had been exposed by the removal of some partition walls. Blumer did not notice any signs of damage to or other problems with the plaster ceiling at the time of his repairs.

In 1985, the Hauerwases installed a drop ceiling on the first floor of the building to improve the efficiency of heating and cooling the premises. They did not notice any problems with the plaster ceiling at that time. Between 1985 and the date of the accident in 1994, the Hauerwases did not inspect the plaster ceiling, were unaware of any problems in that ceiling, and made no repairs to it.

It is undisputed that Richardson was struck by a portion of the original (1913) plaster ceiling when the plaster separated from the lath and fell through the drop ceiling. Blumer repaired the plaster ceiling after its collapse in 1994. He estimated that a piece of ceiling measuring two feet by five feet fell. This piece was not close to the areas he had repaired in 1982. Blumer testified that the ceiling collapsed due to its age and the effect, over time, of vibration from heavy traffic on the adjoining street. He thought this particular area of the ceiling may have fallen off because it was thicker than the rest of the plaster ceiling. While making the repairs in 1994, Blumer inspected the remainder of the plaster ceiling by looking through the drop ceiling where the tiles had been pushed off by falling plaster, and using a spotlight to view whether the plaster was sagging in any other areas.

As noted above, Richardson's suit is based on a theory of premises liability. The district court granted the defendants' motion for summary judgment, holding there was no evidence they knew or should

---

* Retired justice serving as senior judge pursu-ant to Iowa Code section 602.9206 (1999).

have known of the dangerous condition of the plaster ceiling. Richardson's appeal was transferred to the court of appeals. That court affirmed, and we granted Richardson's application for further review.

## II. Scope of Review.

The principles governing the appeal of summary judgment decisions are well established:

> We review a summary judgment ruling for error. The district court correctly enters summary judgment when the record shows "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 237(c). Thus, on review, we examine the record before the district court to decide whether any material fact is in dispute, and if not, whether the district court correctly applied the law. In considering the record, we view the facts in the light most favorable to the party opposing the motion for summary judgment.

General Car & Truck Leasing Sys., Inc. v. Lane & Waterman, 557 N.W.2d 274, 276 (Iowa 1996) (citations omitted). In viewing the facts most favorably to the party opposing the motion for summary judgment, we give the opposing party the benefit of every legitimate inference that can be reasonably deduced from the evidence. See Holsapple v. McGrath, 575 N.W.2d 518, 519–20 (Iowa 1998).

## III. General Principles of Premises Liability Law.

■ The general rule applicable to the liability of possessors of land for injuries caused by conditions on the land is found in the Restatement (Second) of Torts:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343, at 215–16 (1965); accord Mundy v. Warren, 268 N.W.2d 213, 217 (Iowa 1978) (relying on section 343 of the Restatement for the general rule of landowner's liability). The parties do not dispute Richardson's status as an invitee nor the defendants' status as possessors of the land. The dispute in this case centers on the requirement that the defendants know of the dangerous condition or by the exercise of reasonable care should have known of the condition.[1]

Although Richardson does not contend that the defendants had actual knowledge of the condition of the plaster ceiling, he argues that this knowledge should be imputed to them because the defendants created the dangerous condition by installing the drop ceiling. Alternatively, he claims that if the defendants had exercised reasonable care in inspecting the plaster ceiling, they would have discovered the condition of the ceiling. We discuss these issues separately.[2]

---

**1.** The defendants argue that they are only liable for a hidden defect if they *knew* of the existence of the defect, citing our statement in *Paul v. Luigi's, Inc.*, 557 N.W.2d 895, 897 (Iowa 1997), that "an owner has the duty to warn of hidden dangers *known by the owner to be dangerous* if the danger is not known or observable by a person exercising ordinary care." (Emphasis added.) In *Paul*, the court was clearly discussing a situation in which the owner has knowledge of a hidden defect. There was no discussion in that case of the landowner's duty to discover a hidden, but unknown, defect. Therefore, the *Paul* decision is not on point.

**2.** Richardson argued for the first time in his application for further review that the doctrine of res ipsa loquitur applies. We do not consider this issue because it was not timely raised. *See Goodell v. Humboldt County*, 575 N.W.2d 486, 493 n. 8 (Iowa 1998) (holding claim first raised in reply brief cannot be considered on appeal); *Conner v. State*, 362

IV. *Is There Evidence to Support Imputing Knowledge of the Dangerous Condition of the Ceiling to the Defendants?*

█ Knowledge of a ·dangerous condition is imputed to a possessor of land who has created the condition that causes the plaintiff's injury. *See Ling v. Hosts, Inc.,* 164 N.W.2d 123, 126 (Iowa 1969); *Smith v. Cedar Rapids Country Club,* 255 Iowa 1199, 1210, 124 N.W.2d 557, 564 (1963). For example, in *Smith,* the plaintiff was injured when she slipped and fell on a floor that had been waxed to an uneven and extremely slippery finish. 255 Iowa at 1202, 124 N.W.2d at 559. There was no dispute that the defendant had applied the finish to the floor. *Id.* at 1209, 124 N.W.2d at 563. We stated that when "the condition has been created by the owner[,] ... he will not be heard to deny he had notice of it." *Id.* at 1215, 124 N.W.2d at 567.

█ This rule does not, however, help the plaintiff here. There is no evidence that the defendants created the condition in the plaster ceiling *that caused it to fall.* The defendants merely installed a drop ceiling over the plaster ceiling, and there is nothing in the record to indicate that the drop ceiling contributed in any way to the collapse of the plaster ceiling. Therefore, knowledge of the dangerous condition in the plaster ceiling cannot be imputed to the defendants.

V. *Is There Evidence to Establish That the Defendants Would Have Discovered the Condition of the Plaster Ceiling if They had Exercised Reasonable Care?*

█ A. *Duty to inspect.* The defendants' duty of reasonable care as possessors of the premises extends to an inspection of the premises to discover any dangerous conditions or latent defects, " 'followed by such repair, safeguards, or warning as may be reasonably necessary

N.W.2d 449, 457 (Iowa 1985) ("Issue not presented in the trial court may not ordinarily

for [the invitee's] protection under the circumstances.' " *Wieseler v. Sisters of Mercy Health Corp.,* 540 N.W.2d 445, 450 (Iowa 1995) (quoting Restatement (Second) of Torts § 343 cmt. *b,* at 216); *accord Baumler v. Hemesath,* 534 N.W.2d 650, 653 (Iowa 1995) (stating landowner's duty of care to invitees "requires the landowner to use reasonable care to ascertain the actual condition of the premises"); Restatement (Second) of Torts § 343 cmt. *b,* at 216 ("To the invitee the possessor owes ... the additional duty ... to ascertain the condition of the land."), cmt. *d,* at 217 ("An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises....."). The action necessary to satisfy this duty of reasonable care depends upon "the nature of the land and the purposes for which it is used." Restatement (Second) of Torts § 343 cmt. *e,* at 217. "[T]he duty of one who operates a place of entertainment or amusement is higher than that of the owner of private property generally." *Grall v. Meyer,* 173 N.W.2d 61, 63 (Iowa 1969).

In an analogous case involving a landlord/tenant relationship, *In re Estate of Vazquez v. Hepner,* 564 N.W.2d 426, 430 (Iowa 1997), we discussed whether a landlord, who had been sued by his tenant's estate under a theory of implied warranty of habitability, had a duty to inspect the leased premises for defects. The tenant had died in a fire caused by a faulty splice in the electrical wiring located between the first and second floors of the house. *Vazquez,* 564 N.W.2d at 428. We said that the landlord was liable only if he "knew or should have known of the defect." *Id.* at 430. Whether the landlord's affirmative duty to discover latent defects required an inspection of the premises depended on the circumstances. *Id.* For example, we noted that a landlord has no duty to in-

be raised for the first time on appeal.").

spect unless there is "a foreseeable potential of danger." *Id.* We also stated that a landlord is not required "to take extreme measures and expend significant amounts of time and money to discover hazards that may not exist." *Id.; see also Vollmar v. J.C. Penney Co.*, 251 Iowa 1026, 1030, 103 N.W.2d 715, 717 (1960) (holding in premises liability case that defendant had no liability where discovery of a defect in the stair step molding, only the thickness of a half dollar, would have required "a careful hand examination of the step"). Applying these principles, we concluded the landlord in *Vazquez* had no duty to inspect for a defect in the electrical wiring because (1) there was no indication of a wiring problem, and (2) an inspection to discover such a problem would have been very difficult, would have required significant effort and expense, and, even then, may not have revealed the defective splice. *Vazquez*, 564 N.W.2d at 430.

■ Unlike the facts in *Vazquez*, the facts here could support a jury finding that reasonable care warranted an inspection. Although the plaster ceiling had not collapsed in the past, the defendants were aware of the age of the ceiling (it was built in 1913), and they should have realized that a falling ceiling posed a serious danger to their patrons. Even more important, an inspection was not an onerous and impractical burden as it was in *Vazquez*. Here, with a ladder and a flashlight, the defendants could have conducted periodic inspections by simply lifting a ceiling tile in the drop ceiling and viewing the original ceiling, as Blumer did after the accident in 1994. Finally, a business patron such as Richardson is entitled to expect greater preparation to secure his safety than would a tenant to whom control of the premises has been surrendered.[3] *Compare* Restatement (Second) of Torts § 343 cmt. *b*, at 217 (stating invitee is entitled to expect that possessor of premises will ex-

ercise reasonable care in the inspection of the premises to discover any latent defects), *with id.* § 358 cmt. *b*, at 244 (stating lessor of land has no duty to lessee to make a reasonable inspection of the premises to discover dangerous conditions). We think these facts distinguish this case from *Vazquez* and provide an evidentiary basis for a jury finding that the defendants' duty of reasonable care included inspection for hidden defects in the plaster ceiling.

■ B. *Discoverability of defect.* Of course, a failure to inspect is relevant only to the extent such an inspection would have revealed the defect in the ceiling. *See* Restatement (Second) of Torts § 343, at 215 (imposing liability only if the possessor knew or *would have discovered* the defect in the exercise of reasonable care). The record in this case shows that the plaster ceiling fell because the plaster separated from the wood lath. In addition, the record reveals that the cause of this separation was vibration of the ceiling over many years caused by traffic outside the building. We think the jury could make a common-sense inference from this evidence that the separation would not occur instantly, but that the plaster would gradually separate over time and begin to sag, thereby resulting in an appearance observable to someone looking at the ceiling. In fact, the repairman, Blumer, testified that was exactly what he was looking for when he inspected the ceiling after Richardson's accident–signs of sagging that would indicate the need for additional repairs. Therefore, we conclude that the plaintiff generated a jury question on whether the defect in the ceiling would have been discoverable upon inspection. *See Knapp v. Simmons*, 345 N.W.2d 118, 122 (Iowa 1984) (reversing summary judgment because inferences from undisputed facts created a genuine issue of material fact).

---

**3.** Although a plurality of the court would abrogate any distinction based on the status of the plaintiff, *see Sheets v. Ritt, Ritt & Ritt, Inc.*, 581 N.W.2d 602, 603 (Iowa 1998), that position has not yet gained the approval of a majority of this court. Therefore, the status of the plaintiff continues to be a relevant consideration in premises liability law.

### VI. *Summary and Disposition.*

We think material issues of disputed fact exist as to whether reasonable care warranted an inspection of the plaster ceiling and whether such an inspection would have alerted the defendants to the dangerous condition of the ceiling. Therefore, the district court erred in ruling that the defendants were entitled to judgment as a matter of law. Accordingly, we vacate the court of appeals decision affirming the district court, reverse the decision of the district court, and remand the case for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**