# IN THE SUPREME COURT OF IOWA

No. 07–1586

Filed June 5, 2009

**VALERIE KOENIG,**

 Appellant,

vs.

**MARC KOENIG,**

 Appellee.

_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

Plaintiff appeals judgment in negligence suit seeking abandonment of the common-law classifications for premises liability. **REVERSED.**

Marc S. Harding, Des Moines, for appellant.

Jason T. Madden and Amy R. Teas of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

**APPEL, Justice.**

The question of whether Iowa should retain the traditional common-law distinction between an invitee and a licensee in premises liability cases has sharply divided this court in recent years. In this case, we hold that the common-law distinction between an invitee and a licensee no longer makes sound policy, unnecessarily complicates our law, and should be abandoned.

### I. Background Facts and Proceedings.

Valerie Koenig visited the home of her son, Marc Koenig, when he was ill in order to care for him and help with household chores. After doing laundry, she fell on a carpet cleaner hose while carrying clothes to a bedroom. As a result of the fall, Valerie was injured and required medical care, including the placement of a plate in her leg.

Valerie filed a petition alleging that Marc's negligent conduct caused her permanent injuries, pain and suffering, loss of function, and substantial medical costs. Marc generally denied her claim and further asserted that Valerie was negligent in connection with the occurrence and that she failed to mitigate her damages.

At trial, Valerie offered evidence that Marc was aware that the carpet cleaner hose was broken but did not warn her of the defect. Valerie further offered evidence that the color of the hose blended in with the color of the carpet, thereby making it difficult to see, and that one of two lights in the hallway near where she fell was not working, which lessened the light available to detect the hazard. Marc offered evidence that the broken hose was an open and obvious hazard and that Valerie did not turn on the light which was functioning in the hallway area.

At the close of trial, Valerie sought a general negligence instruction rather than the uniform jury instruction on the duty of care owed to a

licensee. The district court found that the law in Iowa on the proper instruction in a premises liability case was unsettled, declined to give the general negligence instruction sought by Valerie, and instead used the uniform jury instruction for licensees.

The jury returned a verdict in favor of Marc. After the district court entered judgment, Valerie filed a motion for a new trial based on the district court's failure to use her proposed general negligence instruction. Although the district court stated that it did not necessarily disagree with Valerie's position, it denied the motion. The district court noted that "Iowa appellate courts have not yet ruled that continued use of the stock instructions for premises liability cases constitutes error." Further, the district court questioned whether Valerie could demonstrate that prejudice occurred as a result of the use of the uniform instructions. Valerie filed a timely notice of appeal.

## II. Standard of Review.

We review challenges to jury instructions for correction of errors at law. *Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 748 (Iowa 2006). We must determine whether the jury instructions presented "are a correct statement of the applicable law based on the evidence presented." *Le v. Vaknin*, 722 N.W.2d 412, 414 (Iowa 2006).

"Error in giving or refusing to give" a jury instruction does not warrant reversal unless it results in prejudice to the complaining party. *Wells v. Enter. Rent-A-Car Midwest*, 690 N.W.2d 33, 36 (Iowa 2004). Prejudice, however, is presumed and reversal required "when instructions are conflicting and confusing." *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 575 (Iowa 1997); *Moser v. Stallings*, 387 N.W.2d 599, 605 (Iowa 1986). Similarly, "[w]hen jury instructions contain a material misstatement of the law, the trial court has no discretion to

deny a motion for a new trial." *Benn v. Thomas*, 512 N.W.2d 537, 539 (Iowa 1994); *Brown v. Lyon*, 258 Iowa 1216, 1222, 142 N.W.2d 536, 539 (1966). An instruction which allocates the burden of proof is a material instruction. *Kaspar v. Schack*, 237 N.W.2d 414, 417 (Neb. 1976).

**III. Discussion.**

**A. Origin and Rationale of Common-Law Distinctions.** The premises liability trichotomy, which distinguishes between invitees, licensees, and trespassers, finds its roots in the English common law. John Ketchum, Note, *Missouri Declines an Invitation to Join the Twentieth Century: Preservation of the Licensee-Invitee Distinction in* Carter v. Kinney, 64 UMKC L. Rev. 393, 395 (1995). "The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S. Ct. 406, 410, 3 L. Ed. 2d 550, 554 (1959). The trichotomy emerged in an era where land ownership was paramount and the primary source of power, wealth, and dominance. *Nelson v. Freeland*, 507 S.E.2d 882, 887 (N.C. 1998). At the core of the trichotomy was the presumption that landowners generally were free to act as they pleased within the confines of their own property. Robert S. Driscoll, Note, *The Law of Premises Liability in America: Its Past, Present, and Some Considerations for Its Future*, 82 Notre Dame L. Rev. 881, 893 (2006).

These common-law classifications arose from reluctance "to leave the determination of liability to a jury 'composed mainly of potential land entrants.' " Michael Sears, Comment, *Abrogation of the Traditional Common Law of Premises Liability*, 44 U. Kan. L. Rev. 175, 176 (1995) (quoting Norman S. Marsh, *The History and Comparative Law of Invitees,*

*Licensees and Trespassers*, 69 L.Q. Rev. 182, 184 (1953)). The distinctions, therefore, were

> created to disgorge the jury of some of its power by either allowing the judge to take the case from the jury based on legal rulings or by forcing the jury to apply the mechanical rules of the trichotomy instead of considering the pertinent issue of whether the landowner acted reasonably in maintaining his land.

*Nelson*, 507 S.E.2d at 887.

The trichotomy emerged in a time of tort law far different from our own. When the trichotomy was developing, "the principle that a man should be held responsible for foreseeable damages" was only reluctantly recognized in a limited number of cases. *Id.* Today, the situation has changed dramatically as the concept of negligence is a predominant concept in our tort law.

The emergence of negligence law almost immediately conflicted with the common-law system. Kathryn E. Eriksen, Comment, *Premises Liability in Texas—Time for a "Reasonable" Change*, 17 St. Mary's L.J. 417, 422 (1986). "Common-law courts, however, decided not to replace the trichotomy with modern principles of negligence law, as they did in almost all other tort areas, but rather 'superimposed the new [negligence] principles upon the existing framework of entrant categories.' " *Nelson*, 507 S.E.2d at 887–88 (quoting Sears, 44 U. Kan. L. Rev. at 176).

Modern courts that have retained the trichotomy have largely set forth the traditional justifications: (1) the continued fear of jury abuse; (2) the fear that by "substituting the negligence standard of care for the common-law categories, landowners will be forced to bear" the financial burden of taking precautions such as maintaining adequate insurance policies; and (3) the need to promote stability and predictability in the law. *Id.* at 888.

**B. Trend in Other Jurisdictions.** The first American blow to the trichotomy was hurled by the United States Supreme Court.[1] In *Kermarec*, the Court refused to extend the common-law distinctions to admiralty law. The Court heavily criticized the doctrine, noting:

> In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards "imposing on owners and occupiers a single duty of reasonable care in all the circumstances."

*Kermarec*, 358 U.S. at 630–31, 79 S. Ct. at 410, 3 L. Ed. 2d at 554–55 (quoting *Kermarec v. Compagnie Generale Transaltlantique*, 245 F.2d 175, 180 (2d Cir. 1957) (Clark, C.J., dissenting)).

After *Kermarec*, the movement away from the common-law distinctions received a major boost in 1968 with the California Supreme Court's decision in *Rowland v. Christian*, 443 P.2d 561 (Cal. 1968), *abrogated in part by statute as stated in Calvillo-Silva v. Home Grocery*, 968 P.2d 65, 72 (Cal. 1998). In rejecting application of the common-law formulation, the *Rowland* court noted,

> [W]e are satisfied that continued adherence to the common law distinctions can only lead to injustice or, if we are to avoid injustice, further fictions with the resulting complexity and confusion. We decline to follow and perpetuate such rigid classifications . . . although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts

---

[1]The creators of the trichotomy proved to also be its first detractors. England passed the Occupiers' Liability Act of 1957 effectively eliminating the distinction between an invitee and licensee from English law. Driscoll, 82 Notre Dame L. Rev. at 885.

giving rise to such status have some bearing on the question of liability, the status is not determinative.

443 P.2d at 568. Following *Rowland*, numerous courts abandoned the common-law system. *See Smith v. Arbaugh's Rest., Inc.*, 469 F.2d 97, 107 (D.C. Cir. 1972); *Webb v. City & Borough of Sitka*, 561 P.2d 731, 734 (Alaska 1977), *abrogated in part by statute as stated in Univ. of Alaska v. Shanti*, 835 P.2d 1225, 1228 n.5 (Alaska 1992); *Mile High Fence Co. v. Radovich*, 489 P.2d 308, 314–15 (Colo. 1971), *abrogated by statute as stated in Bath Excavating & Constr. Co. v. Wills*, 847 P.2d 1141, 1145 (Colo. 1993); *Pickard v. City & County of Honolulu*, 452 P.2d 445, 446 (Haw. 1969); *Cates v. Beauregard Elec. Coop., Inc.*, 328 So. 2d 367, 370–71 (La. 1976); *Limberhand v. Big Ditch Co.*, 706 P.2d 491, 496 (Mont. 1985); *Moody v. Manny's Auto Repair*, 871 P.2d 935, 942 (Nev. 1994), *superseded by statute as stated in Wiley v. Redd*, 885 P.2d 592, 595 (Nev. 1994); *Ouellette v. Blanchard*, 364 A.2d 631, 634 (N.H. 1976); *Basso v. Miller*, 352 N.E.2d 868, 872 (N.Y. 1976); *Mariorenzi v. Joseph DiPonte, Inc.*, 333 A.2d 127, 131–32 (R.I. 1975), *overruled in part by Tantimonico v. Allendale Mut. Ins. Co.*, 637 A.2d 1056, 1057 (R.I. 1994); *see also* Vitauts M. Gulbis, Annotation, *Modern Status of Rules Conditioning Landowner's Liability Upon Status of Injured Party as Invitee, Licensee, or Trespasser*, 22 A.L.R.4th 294 (2008).

After *Rowland*, however, a second, more moderate trend began to emerge in the case law. Instead of abandoning the trichotomy entirely, some courts began to abandon the distinction between invitees and licensees, while retaining the trespasser classification. *See Wood v. Camp*, 284 So. 2d 691, 695 (Fla. 1973); *Jones v. Hansen*, 867 P.2d 303, 310 (Kan. 1994); *Poulin v. Colby Coll.*, 402 A.2d 846, 851 n.5 (Me. 1979); *Mounsey v. Ellard*, 297 N.E.2d 43, 51–52 & n.7 (Mass. 1973); *Peterson v.*

*Balach*, 199 N.W.2d 639, 642 (Minn. 1972); *Heins v. Webster County*, 552 N.W.2d 51, 57 (Neb. 1996); *Ford v. Bd. of County Comm'rs*, 879 P.2d 766, 770 (N.M. 1994); *Nelson*, 507 S.E.2d at 892; *O'Leary v. Coenen*, 251 N.W.2d 746, 751 (N.D. 1977); *Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn. 1984), *overruled in part on other grounds by McIntyre v. Balentine*, 833 S.W.2d 52, 54 (Tenn. 1992); *Mallet v. Pickens*, 522 S.E.2d 436, 446 (W. Va. 1999); *Antoniewicz v. Reszcynski*, 236 N.W.2d 1, 11 (Wis. 1975); *Clarke v. Beckwith*, 858 P.2d 293, 296 (Wyo. 1993).

Still other states, including Iowa, limited the common-law system by refusing to apply the doctrine to child entrants. *See Cope v. Doe*, 464 N.E.2d 1023, 1028 (Ill. 1984); *Rosenau v. City of Estherville*, 199 N.W.2d 125, 136 (Iowa 1972). Some courts and the Restatement drew another exception—imposing a duty of reasonable care upon landowners to warn a "discovered" or "foreseeable" trespasser of any dangerous condition which is known by the landowner but not by the trespasser. *See* 2 Restatement (Second) of Torts § 337 cmt. b (1979); *Appling v. Stuck*, 164 N.W.2d 810, 814–15 (Iowa 1969); *Latimer v. City of Clovis*, 495 P.2d 788, 792 (N.M. Ct. App. 1972) (reversing summary judgment because there was a genuine issue of material fact as to whether decedent was a discovered or ordinary trespasser).

Although a bare majority of states have now departed from the original trichotomy in some fashion, a number of courts have declined to abandon the common-law system. *See McMullan v. Butler*, 346 So. 2d 950, 952 (Ala. 1977); *Nicoletti v. Westcor, Inc.*, 639 P.2d 330, 332 (Ariz. 1982); *Bailey v. Pennington*, 406 A.2d 44, 47–48 (Del. 1979); *Mooney v. Robinson*, 471 P.2d 63, 65 (Idaho 1970); *Kirschner ex rel. Kirschner v. Louisville Gas & Elec. Co.*, 743 S.W.2d 840, 844 (Ky. 1988); *Sherman v. Suburban Trust Co.*, 384 A.2d 76, 83 (Md. 1978); *Little ex rel. Little v. Bell,*

719 So. 2d 757, 764 (Miss. 1998); *Vega ex rel. Muniz v. Piedilato*, 713 A.2d 442, 448–49 (N.J. 1998); *Sutherland v. Saint Francis Hosp., Inc.*, 595 P.2d 780, 782 (Okla. 1979); *Di Gildo v. Caponi*, 247 N.E.2d 732, 736 (Ohio 1969); *Musch v. H-D Elec. Coop., Inc.*, 460 N.W.2d 149, 156–57 (S.D. 1990); *Buchholz v. Steitz*, 463 S.W.2d 451, 454 (Tex. Civ. App. 1971); *Tjas v. Proctor*, 591 P.2d 438, 441 (Utah 1979).

In total, the jurisdictions are now split, with a majority of states departing from the common-law classifications in some manner, and a substantial minority either rejecting abolition or not taking a recent position.

**C. Prior Iowa Case Law.** Almost four decades ago this court noted, "The application of rigid common-law rules (which turn the liability of the land possessor on the status of the person harmed) in the context of our complex, industrialized and heavily populated society has come under increasing criticism." *Rosenau*, 199 N.W.2d at 135. Despite this observation, this court has not yet expressly rejected use of the common-law system in the intervening years. *See id.* ("We observe common-law classifications of injured parties have proliferated in our own decisions."); *see also Paul v. Luigi's, Inc.*, 557 N.W.2d 895, 897 (Iowa 1997) (explaining court's reluctance to conclusively establish land possessor's duty of care on the basis of injured party's status); *Pottebaum v. Hinds*, 347 N.W.2d 642, 645 (Iowa 1984) (same).

The question of the continued validity of the trichotomy was squarely raised in *Sheets v. Ritt, Ritt & Ritt, Inc.*, 581 N.W.2d 602 (Iowa 1998). In *Sheets*, the plaintiff sued the operators of a motel after she slipped and fell in the shower area of the ladies' locker room. *Sheets*, 581 N.W.2d at 603. Just as in the case at hand, the *Sheets* plaintiff

sought a general jury instruction on negligence as opposed to the trichotomy approach. *Id.* at 604.

In addressing the issue, a plurality of the court recognized its longstanding disenchantment with the common-law distinctions. *Id.* The plurality then concluded that this court has not previously abrogated the trichotomy for the pragmatic determination that the plaintiff had not suffered harm due to the use of the common-law jury instructions. *Id.* at 606. The plurality noted the dozens of jurisdictions that had abrogated the common-law formula, either in whole or in part—abolishing the distinction between invitees and licensees. *Id.* at 605. Finally, the plurality concluded that although "adoption of comparative fault [did] not seem to have been the usual catalyst for abandonment of the common-law distinctions," the common-law distinctions must now be abandoned in Iowa. The plurality reasoned that "assigning duties to owners or occupiers of land on the basis of the status of a visitor is . . . unreasonable and unfair." *Id.*

The *Sheets* decision, however, was only joined by four justices. Four other justices concurred in result, determining that the plaintiff was not prejudiced by the use of the common-law instructions, but remaining unwilling to abandon the traditional classifications. *Id.* at 607. Justice Lavorato took no part, leaving the fundamental issue unresolved.

A year later, this court reasserted its commitment to the common-law distinctions. In *Richardson v. Commodore, Inc.*, 599 N.W.2d 693, 695 (Iowa 1999), a bar patron sued the operators of the bar after he was struck by falling plaster while playing pool. The issue in *Richardson*, however, was not the validity of the jury instructions, but rather whether there was sufficient evidence to impute knowledge of the dangerous condition—the sagging plaster ceiling—to the defendants. *Richardson,*

599 N.W.2d at 697. This court nevertheless took the opportunity in *Richardson* to include the following footnote:

> Although a plurality of the court would abrogate any distinction based on the status of the plaintiff, *see Sheets v. Ritt, Ritt & Ritt, Inc.,* 581 N.W.2d 602, 603 (Iowa 1998), that position has not yet gained the approval of a majority of this court. Therefore, the status of the plaintiff continues to be a relevant consideration in premises liability law.

*Id.* at 698 n.3.

This court next addressed the trichotomy in *Alexander v. Medical Associates Clinic,* 646 N.W.2d 74 (Iowa 2002). In *Alexander,* the plaintiff trespassed into an undeveloped open field next to the defendant's office building to retrieve his sister's dog. *Alexander,* 646 N.W.2d at 75. The plaintiff was injured when, walking in darkness, he fell into a ditch and hurt his knee. *Id.* The only issue in *Alexander* was whether Iowa should abandon the common-law rule of trespasser liability and replace it with a duty of reasonable care under the circumstances. *Id.* Canvassing the case law in other jurisdictions, this court determined that only six states use a negligence standard to govern trespasser liability, twenty-nine states declined the opportunity to abrogate the common-law trespasser standard, "and two state legislatures . . . reinstated the common-law trespasser rule after it had been abolished by court decision." *Id.* at 78. The *Alexander* court concluded that an overwhelming number of courts retained the common-law trespasser rule (1) because the rule retains validity in modern day life as recognition of the social good of property ownership/control; and (2) because the "rule is . . . better suited to achieve a reasonable balance between individual property rights and the interests of a trespasser." *Id.* at 79.

Due to his recusal in *Sheets,* then Chief Justice Lavorato had theretofore been silent on validity of the common-law distinctions. He

rectified that omission in *Alexander* by writing a special concurrence. *Id.* at 80 (Lavorato, C.J., specially concurring). The special concurrence favored abolition of the common-law distinctions noting that they were borne of a different time "and in a wholly different legal climate from the one that exists today." *Id.* The opinion advocated for the middle ground—abolishing the distinction between invitees and licensees, while retaining the common-law rule regarding trespassers. *Id.* In reaching this conclusion, the concurrence noted that "inherent in the trichotomy is the notion that a jury could not be trusted to enter a just verdict." *Id.* at 82. This belief was out of sync with the whole of tort law where juries are afforded considerable authority and discretion. *Id.*

The special concurrence further criticized the trichotomy as inherently confusing, potentially leading to inequities. Though not at issue in this case, the concurrence noted the routine difficulty in determining an entrant's status. *Id.* at 83 (citing *Franconia Assocs. v. Clark*, 463 S.E.2d 670 (Va. 1995) (considering whether mall employee lost status as an invitee by attempting to stop a robber); *Lakeview Assocs., Ltd. v. Maes*, 907 P.2d 580 (Colo. 1995) (discussing whether tenant, who paid rent but happened to not own a car, was invitee or licensee when she fell while walking across the parking lot of an apartment complex); *Peterson v. Romine*, 960 P.2d 1266 (Idaho 1998) (considering whether plaintiff who parked in downtown parking lot provided for shoppers, but who shopped at an adjacent but unaffiliated store, was therefore not a business invitee when she was injured by stepping into a pothole); and *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 662 N.E.2d 287 (Ohio 1996) (questioning whether fare-paying customer of subway system, who was assaulted and thrown by third

parties upon exiting train, was still invitee when left lying on tracks and struck by train)).

Due to this potential for confusion, the *Alexander* special concurrence asserted that abolishing the common-law formulation would lead to more predictable results. And, contrary to critics, would not leave the jury utterly standardless. The foreseeability of the visitor's presence and the time, manner, place, and surrounding circumstances of his entry would continue to be relevant factors in determining whether the landowner acted reasonably. *Id.* at 84. Abolishing the common-law distinctions does not truly alter the underlying principles of premises liability. *Id.* It simply prevents, according to the concurrence, an entrant's status as being the sole/primary factor. *Id.* Finally, the concurrence noted that abolishing the distinctions would recognize "that our modern social mores and humanitarian values place more importance on human life than on property." *Id.*

The premises liability issue returned to this court three years later in *Anderson v. State*, 692 N.W.2d 360 (Iowa 2005). Anderson filed suit against the State after she was injured leaving the University of Northern Iowa library. *Anderson*, 692 N.W.2d at 361. Anderson claimed that the State and its agents were negligent in not closing the library due to a winter storm. *Id.* at 363. Once again the plaintiff objected to the use of the stock instruction and claimed that the court should have alternatively instructed the jury that the possessor of land must exercise reasonable care under all the circumstances existing at the time and place of the injury for the protection of lawful entrants. *Id.* at 367. The district court overruled the objection. While this court noted the issue, the majority opinion did not contain an analysis or exegesis on the subject. Instead, the court merely noted that it was evenly divided on the

jury instruction issue and affirmed the district court on that ground by operation of law. *Id.*

This court last addressed the premises liability issue just three-and-a-half years ago in *Benham v. King,* 700 N.W.2d 314 (Iowa 2005). While visiting his dentist King in 2000, Benham was injured when the dental chair suddenly collapsed and he fell against a sink and cabinet located near the chair. *Benham,* 700 N.W.2d at 316. The case proceeded to trial, where the district court granted King's motion for directed verdict concluding that there was no evidence that King should have known of the defective condition of the chair which caused it to collapse. *Id.* at 317. This court determined that directed verdict was proper as Benham failed to present evidence that King could have discovered the particular defect that caused the injury through the exercise of reasonable care. *Id.* at 320. Therefore, King did not breach his duty of care to Benham, an invitee. *Id.* at 321.

While the court was unanimous as to result, this case once again produced a lengthy special concurrence. *Id.* (Wiggins, J., specially concurring). This special concurrence noted that:

> A more logical approach to a premises liability case would be to abandon the antiquated common-law dichotomy with its contradictory and confusing rules and adopt the modern rule requiring a possessor of land to exercise reasonable care under all the circumstances existing at the time and place of the injury for the protection of invitees and licensees.

*Id.* at 322.

**D. Adoption of General Negligence Standard for Invitees and Licensees.** Taking into consideration the wealth of case law in our sister jurisdictions, academic commentary, and the history of the common-law distinctions, we now conclude that the advantages of abolishing the

distinction between invitees and licensees outweigh the value of its retention.

The primary advantage of abolishing the invitee-licensee distinction is to avoid confusion. While there is no issue in this case as to Valerie's status, properly categorizing an entrant's status has proven a dubious task in other cases. As noted previously, the *Alexander* special concurrence is replete with examples of the difficulties appellate courts have experienced in attempting to fit modern human interaction into rigid categories developed three centuries ago. Such confusion is likely to only increase in the future. *See generally* Matthew D. Lincoln, Note, *Landowners' Duty to Guests of Invitees and Tenants*: Vogt v. Murraywood Swim & Racquet Club & Goode v. St. Stephens United Methodist Church, 57 S.C. L. Rev. 387 (2005) (discussing South Carolina's difficulty in classifying the duty owed to guests of invitees or tenants vis-à-vis the landowner).

Not only does this confusion provide ample grounds for appeal, it also prevents the development of an easily applicable standard for future cases. As a result, retention of the common-law system has not fulfilled its goal of predictability, but rather has "produced confusion and conflict." *Kermarec*, 358 U.S. at 631, 79 S. Ct. at 410, 3 L. Ed. 2d at 555; *Peterson*, 199 N.W.2d at 643 (stating that "judges have been highly critical of the common-law straitjacket of highly technical and arbitrary classifications which have often led to confusion in the law and inequity in the cases decided").

The difficultly in distinguishing between invitees and licensees underscores another disadvantage of the classification—people do not alter their behavior based on an entrant's status as an invitee or

licensee. Many courts have illustrated this distinction's divorce from reality. The West Virginia Supreme Court posed this hypothetical:

> "A canvasser who comes on your premises without your consent is a trespasser. Once he has your consent, he is a licensee. Not until you do business with him is he an invitee. Even when you have done business with him, it seems rather strange that your duty towards him should be different when he comes up to your door from what it is when he goes away. Does he change his colour in the middle of the conversation? What is the position when you discuss business with him and it comes to nothing? No confident answer can be given to these questions. Such is the morass into which the law has floundered in trying to distinguish between licensees and invitees."

*Mallet*, 522 S.E.2d at 441 (quoting *Mariorenzi*, 333 A.2d at 133 n.4). The fungible and unpredictable nature of the classifications makes it impossible for landowners to conform their behavior to current community standards. *See also id.* at 443 ("If we wish for our law to be predictable, and we do, then we have a duty to shape it in such a way that it meshes with the general, reasonable assumptions that people make in their daily lives."). It also makes it impossible for entrants to understand to what level of danger or risk they are being exposed.

In addition, abandonment of the common-law distinction between invitees and licensees is consistent with modern notions of tort law and liability. When this distinction was adopted in the nineteenth century by American courts, our tort law was replete with special rules and arguably arbitrary common-law distinctions. Since that time, these doctrines, such as contributory negligence, which often yielded inequitable results, have fallen by the wayside in favor of comparative fault. "The use of a general standard of reasonable care under all the circumstances . . . will bring this area of the law into conformity with modern tort principles by allowing increased jury participation and the use of contemporary

standards." Sears, 44 U. Kan. L. Rev. at 184–85. Contrary to courts that have upheld the trichotomy, there is nothing to fear about jury involvement. As the North Carolina Supreme Court correctly points out, this fear fails to take into account both the primacy of juries in other areas of tort law and the reality that "modern jurors are more likely than feudal jurors to be landowners themselves. . . ." *Nelson,* 507 S.E.2d at 888.

Moreover, both logic and almost forty years of practice suggest that there is no reason to question a jury's ability to perform in the area of premises liability as opposed to any other area of tort law. *See Heins,* 552 N.W.2d at 57 ("We find no merit in the argument that the duty of reasonable care is difficult for a fact finder to understand or apply, because it has been used successfully with regard to invitees and is the standard used in almost all other tort actions."). The fear of a runaway, standardless jury has not been substantiated in the jurisdictions that have abolished the common-law distinction between invitees and licensees. *See generally* Carl S. Hawkins, *Premises Liability After Repudiation of Status Categories: Allocation of Judge and Jury Functions,* 1981 Utah L. Rev. 15 (concluding ordinary negligence principles have constrained jury discretion in premises liability cases in jurisdictions that abolished the classification system).

Finally, abandonment of this common-law distinction recognizes a higher valuation of public safety over property rights.

> "[T]he traditional rule confers on an occupier of land a special privilege to be careless which is quite out of keeping with the development of accident law generally and is no more justifiable here than it would be in the case of any other useful enterprise or activity."

*Antoniewicz*, 236 N.W.2d at 8–9 (quoting 2 Fowler V. Harper & Fleming James Jr., *The Law of Torts* § 27.3, at 1440 (1956)). This "special privilege" is fundamentally no longer the public policy of this state. This court has already implicitly recognized the harshness, rigidity, and inequity of the common-law scheme by crafting exceptions for children and known trespassers. "[M]odern times demand a recognition that requiring all to exercise reasonable care for the safety of others is the more humane approach." *Jones*, 867 P.2d at 307.

The common-law distinction between invitees and licensees was borne of a different time, a product of a different culture, and utilized by a legal system far removed from today's realities.

> Life in these United States is no longer as simple as in the frontier days of broad expanses and sparsely settled lands. Inexorably our people, gregarious in nature, have magnetized to limited and congested areas. With social change must come change in the law, for as President Woodrow Wilson observed, "The first duty of the law is to keep sound the society it serves."

*Wood*, 284 So. 2d at 696.

"When the reasons for the rule disappear, the rule ought to disappear." *Alexander*, 646 N.W.2d at 84 (Lavorato, C.J., specially concurring); *see also Funk v. United States*, 290 U.S. 371, 383, 54 S. Ct. 212, 216, 78 L. Ed. 369, 376 (1933) ("It has been said so often as to have become axiomatic that the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions."). As the reasons supporting the common-law distinction between invitees and licensees no longer exist, we now abandon the distinction.[2]

---

[2]The continued validity of the common-law approach to trespassers has not been raised in this appeal. We thus express no opinion on the continued validity of common-law doctrines involving trespassers.

In place of the common-law formulation, we adopt the multifactor approach advanced by the Nebraska Supreme Court and adopted by the *Sheets* court.

> "We impose upon owners and occupiers only the duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors. Among the factors to be considered in evaluating whether a landowner or occupier has exercised reasonable care for the protection of lawful visitors will be: (1) the foreseeability or possibility of harm; (2) the purpose for which the entrant entered the premises; (3) the time, manner, and circumstances under which the entrant entered the premises; (4) the use to which the premises are put or are expected to be put; (5) the reasonableness of the inspection, repair, or warning; (6) the opportunity and ease of repair or correction or giving of the warning; and (7) the burden on the land occupier and/or community in terms of inconvenience or cost in providing adequate protection."

*Sheets*, 581 N.W.2d at 606 (quoting *Heins*, 552 N.W.2d at 57).

This multifactored approach will ensure that the interests of land owners and injured parties are properly balanced. It further allows the jury to take into consideration common sense notions of reasonable care in assessing liability. By adopting this test, we eliminate an arcane and difficult-to-understand distinction from our law and make it simpler and more easily understood.

As a result of our holding abandoning the distinction between invitees and licensees in premises liability cases, it follows that the instruction given by the district court in this case was erroneous.

Further, unlike in *Sheets*, we find the error in the instruction to be material, requiring reversal. With respect to subparagraph 3, Instruction No. 10 improperly shifted the burden of proof from the defendant to the plaintiff by requiring the plaintiff to prove that she "did not know or have reason to know of the condition and the risk involved." Such an instruction is a holdover from the bygone era of contributory negligence,

and directly contradictory to the defendant's requested instruction on comparative fault. An instruction that improperly states the burden of proof is a material error demanding reversal. *See Kaspar*, 237 N.W.2d at 417 (finding instructions that deal with the burden of proof to be "at the core of and central to the proper disposition and consideration by the jury" so as to merit a finding of categorical error).

On remand, the district court should develop a more direct, simple instruction consistent with our adoption of the multipronged test to guide the jury in its deliberations.

## IV. Conclusion.

The district court's ruling on the motion for new trial is reversed, the judgment vacated, and the matter remanded for a new trial using a general negligence instruction to define the scope of duty owed by the defendant in this case.

**REVERSED.**

All justices concur except Streit, J., who concurs specially.

**STREIT, Justice (specially concurring).**

The majority takes a much-needed step away from the premises liability trichotomy, but needlessly leaves standing one leg of a three-legged stool.  This wobbly paradigm should also be given a gentle nudge over the cliff.  We should completely abolish the classification system, saving no remnant.  *Alexander v. Med. Assocs. Clinic,* 646 N.W.2d 74, 86 (Iowa 2002) (Streit, J., concurring specially); *Rowland v. Christian,* 443 P.2d 561, 568–69 (Cal. 1968), *abrogated in part by statute as stated in Calvillo-Silva v. Home Grocery,* 968 P.2d 65, 72 (Cal. 1998).