MINTON, C.J., DISSENTING:
Today the Court chooses to retain status-based distinctions for entrants to land *20 in assessing landowner liability and, in so doing, has further distanced itself from a concept of modern tort law that nearly half of the states have adopted in some form. Because I would instead abandon the distinction between licensees and invitees in favor of a unitary duty of reasonable care owed to all non-trespassing entrants, I respectfully dissent.
The common-law distinctions have faced heavy criticism by American courts, beginning with the United States Supreme Court's decision in Kermarec v. Compagnie Generale Transatlantique.[5] In that case, the Court refused to apply the common-law trichotomy to admiralty law, noting that the doctrine had become muddled and difficult to apply in the context of modern society:
In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards "imposing on owners and occupiers a single duty of reasonable care in all the circumstances."[6]
Shortly thereafter, the California Supreme Court became the first state court to reject the application of the common-law trichotomy.[7] Instead, the Court determined that the proper test for assessing landowner liability "is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others...."[8] In so doing, the Court in Rowland expressed the same concerns from Kermarec, explaining that the "continued adherence to the common law distinctions can only lead to injustice or, if we are to avoid injustice, further fictions with the resulting complexity and confusion."[9]
Since Rowland, some 23 other states and the Restatement (Third) of Torts "have adopted a unitary standard of reasonable care to at least licensees and invitees"[10] -and for good reason. As noted above, the difficult task of applying rigid categories to land entrants whose purpose for being on the land is often imprecise or fluid has frequently led to inequitable results.
The facts of this case illustrate that very problem. Although not central to the issue, the trial court left unsettled Bonnie Smith's status as an entrant on Barbara Smith's land.[11] While Barbara argued that *21 her mother was on the premises simply to visit her great-granddaughter as a social guest, Bonnie argued that she was on the premises to help Barbara care for the child. If Barbara was on the premises for a purpose that was not entirely one or the other-which seems probable given her maternal relationship to Barbara-the current approach would still require Bonnie to be assigned a status as either licensee or invitee, and the duty owed to her would be different under each. It is not difficult to imagine a scenario in which Barbara could suffer an injury from which she could recover as an invitee but could not as a licensee. In such a case, the traditional approach would fail to reach a just result.[12]
Not only do the difficulty in applying the classifications and the potential for an entrant's status to shift unnoticed produce unjust results, but they also undercut the notion that the common-law system provides predictability to either landowners or entrants. As the Iowa Supreme Court correctly points out, "the fungible and unpredictable nature of the classifications makes it impossible for landowners to conform their behavior to current community standards."[13] Likewise, it "makes it impossible for entrants to understand to what level of danger or risk they are being exposed."[14]
Perhaps most importantly, the continued attempt "to fit modern human interaction into rigid categories developed three centuries ago"[15] has led courts to make subtle modifications to the duties owed under the classifications and the ways they are applied. As a result, the doctrine has become increasingly complex and difficult to apply.[16] Again, the facts of this case provide an example.
The trial court in the present case was apparently convinced that our decisions in Kentucky River Med. Ctr. v. McIntosh,[17] Shelton v. Kentucky Easter Seals Soc'y , Inc.,[18] and Carter v. Bullitt Host, LLC[19] -three cases that involved modifications or refinements to the way in which the classifications were applied-had abolished the distinction between licensees and invitees. As a result, the trial court submitted to the jury instructions that charged Barbara with a general duty of reasonable care *22 instead of the more specifically defined standard owed to a licensee or invitee.
Recognizing that Shelton, McIntosh, and Carter had not gone so far, the Court of Appeals explained that those cases had retained the traditional categories, but that they were now to be "considered 'along with other circumstances such as 'foreseeability, the gravity of the potential harm, and the possessor's right to control his property' to determine the extent of the duty."[20] From there, the appellate court determined that the jury instructions "reflect[ed] the current state of Kentucky premises liability law,"[21] and that they were not erroneous. A majority of this Court now agrees that we have not abandoned the classifications and holds that the jury instructions were erroneous.
With three levels of the Kentucky Court of Justice disagreeing on the way in which a landowner's liability to her own mother is assessed, it is difficult to see how retaining the current system advances the goal of "establishing an easily applicable standard for future cases."[22] Continued use of the rigid classifications is likely to produce more confusion, less predictability, and unjust results. Those concerns were compelling enough for some 24 other states and the American Law Institute to adopt a unitary standard of care to at least invitees and licensees.
Adopting a unitary duty of reasonable care for both licensees and invitees would "eliminate the complex, confusing, and unpredictable state of premises-liability law and replace[ ] it with a rule which focuses the jury's attention upon the pertinent issue of whether the landowner acted as a reasonable person would under the circumstances."[23] I would adopt such a standard and put an end to the perpetual state of confusion that is our common-law system of premises liability. Accordingly, I would affirm the Court of Appeals and hold that the trial court's instructions in this case were correct.
Venters, J., joins.

358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

Id. at 410 (quoting Kermarec v. Compagnie Generale Transatlantique, 245 F.2d 175, 180 (2d Cir. 1957) (Clark, C.J. dissenting) ).

Rowland v. Christian, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561, 568 (1968), superseded in part by statute as stated in Calvillo-Silva v. Home Grocery, 19 Cal.4th 714, 80 Cal.Rptr.2d 506, 968 P.2d 65, 72 (1998).

Id.

Id.

Reporter's Note, Restatement (Third) of Torts § 51 (Am. Law Inst. 2009).

Under the traditional approach, the fact that the entrant was a family member will not dictate their status. Compare Tharp v. Tharp, 346 S.W.2d 44, 45 (Ky. 1961) (finding that father who was a visitor in son and daughter-in-law's home was a licensee), and Keown v. Keown, 394 S.W.2d 915, 916 (Ky. 1965) (finding "father-son relationship" made son a licensee in his father's home); with Cozine v. Shuff, 378 S.W.2d 635, 637 (Ky. 1964) (finding sister of landowner was an invitee where she was on the premises at the request of landowner to help with house work).

Professor Carl Hawkins examined 80 cases from unitary jurisdictions and concluded, "Too many of these cases illustrate the high propensity of the status categories to produce error because of their rigidity and the complicated modifications needed to avoid the harsh potential." Carl S. Hawkins, Premises Liability After Repudiation of the Status Categories: Allocation of Judge and Jury Functions, 1981 Utah L. Rev. 15, 60-61. Other courts have correctly pointed out the possibility that an entrant's status may change even during the course of a single visit on the premises. See , e.g., Koenig v. Koenig, 766 N.W.2d 635, 644 (Iowa 2009) (quoting Mallet v. Pickens, 206 W.Va. 145, 522 S.E.2d 436, 441 (1999) ).

Koenig, 766 N.W.2d at 644.

Id.

Id. at 643.

See O'Leary v. Coenen, 251 N.W.2d 746, 752 (N.D. 1977) ("The common law category distinctions and exceptions make the use of the common law categories complex, confusing, and inequitable."); Nelson v. Freeland, 349 N.C. 615, 507 S.E.2d 882, 889 (1998) ("On a more practical level, the trichotomy has been criticized for creating a complex, confusing, and unpredictable state of law.").

319 S.W.3d 385 (Ky. 2010).

413 S.W.3d 901 (Ky. 2013).

477 S.W.3d 288 (Ky. 2015).

Barbara Smith v. Bonnie Smith , No. 2016-CA-000194-MR, 2017 WL 2608802, *4 (Ky. App. June 16, 2017) (quoting Bryant v. Jefferson Mall Co., L.P., 486 S.W.3d 310, 312 (Ky. App. 2015) ).

Id.

Koenig, 766 N.W.2d at 644 ("As a result, retention of the common-law system has not fulfilled its goal of predictability, but rather has 'produced confusion and conflict." ') (quoting Kermarec, 358 U.S. at 631, 79 S.Ct. 406 ).

Nelson, 507 S.E.2d at 631-32.