**RenElla Sue CRAWFORD, Appellant,**

v.

**Steve YOTTY and Myron Ropp, Appellees.**

**No. 11–0934.**

Supreme Court of Iowa.

March 15, 2013.

Steven Gardner of Kiple, Denefe, Beaver, Gardner & Zingg, L.L.P., Ottumwa, for appellant.

Craig A. Levien of Betty, Neuman & McMahon, P.L.C., Davenport, for appellees.

ZAGER, Justice.

RenElla Sue Crawford brought suit against residential landlords, Steve Yotty and Myron Ropp, after she slipped and fell on the premises while visiting her son who leased an apartment from them. The jury returned a verdict for the landlords. The court of appeals reversed and remanded for a new trial after concluding the district court erred in excluding Crawford's proposed instructions informing the jury of a landlord's obligations under the lease agreement and under Iowa Code section 562A.15(1)($a$)–($d$). On further review we find that the legal principles contained in Crawford's proposed instructions were adequately encompassed by the instructions given by the district court. Accordingly, we vacate the decision of the court of appeals and affirm the district court's ruling.

## I. Factual Background and Procedural History.

On the morning of February 22, 2008, Crawford arrived at her son's apartment to pick him and her two grandchildren up so they could spend the weekend with her at her home. After parking her car and walking to the apartment building, she slipped and fell on the steps leading down to her son's apartment.

On April 15, 2009, Crawford filed suit against the landlords and owners of the apartment building, Yotty and Ropp, alleging common law negligence. She further alleged failure to maintain the premises in accordance with the Iowa Uniform Resi-

dential Landlord and Tenant Act (IURLTA), and the rental agreement between the landlords and her son, Nathan Smith. Iowa Code § 562A.15(1)(*a*)–(*d*) (2009). Crawford contended the steps on which she fell were unlit, covered in ice and snow, and lacked a handrail. In their answer, filed May 8, Yotty and Ropp denied Crawford's allegations of negligence.

The matter proceeded to a jury trial on May 17, 2011. On May 19, the court held a jury instruction conference at which time Crawford's counsel objected to the court's proposed instructions and requested additional instructions regarding the landlords' obligations under the IURLTA and their contractual obligations under the rental agreement. The court denied Crawford's request for additional instructions reasoning that the court's proposed instructions already encompassed the duties and obligations Crawford sought to include.

In subsequently instructing the jury on negligence and premises liability theories of recovery, the district court included the following instructions:

### INSTRUCTION NO. 15

You must decide whether the claimed harm to the Plaintiff is within the scope of the Defendants' liability. The Plaintiff's claimed harm is within the scope of the Defendants' liability if that harm arises from the same general types of danger that the Defendants should have taken reasonable steps to avoid.

Consider whether repetition of the Defendants' conduct makes it more likely harm of the type the Plaintiff claims to have suffered would happen to another. If not, the harm is not within the scope of liability.

. . . .

### INSTRUCTION NO. 17

The Plaintiff must prove all of the following propositions:

1. The Defendants knew, or in the exercise of reasonable care, should have known of a condition on their premises and that it involved an unreasonable risk of injury to a person in Plaintiff RenElla Crawford's position.

2. The Defendants knew, or in the exercise of reasonable care, should have known:

    a. Plaintiff RenElla Crawford would not discover the condition, or

    b. The Plaintiff would not realize the condition presented an unreasonable risk of injury, or

    c. The Plaintiff would not protect herself from the condition.

3. The Defendants were negligent in:

    a. Failing to maintain their premises in a reasonably safe condition, or

    b. Failing to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors.

4. The negligence was a cause of the Plaintiff's damage.

5. The amount of damage.

If the Plaintiff has failed to prove any of these propositions, the Plaintiff is not entitled to damages. If the Plaintiff has proven all of these propositions, then you will consider the defense of comparative fault. . . .

. . . .

### INSTRUCTION NO. 19

Owners and landlords owe a duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors. You may consider the following factors in evaluating whether the Defendants exercised reasonable care for the protection of the lawful visitors:

1. The foreseeability or possibility of harm;

2. The purpose for which the visitor entered the premises;

3. The time, manner, and circumstances under which the visitor entered the premises;

4. The use to which the premises are put or are expected to be put;

5. The reasonableness of the inspections, repair or warning;

6. The opportunity and ease of repair or correction or giving of the warning; and

7. The burden on the land occupier and/or community in terms of inconvenience or cost in providing adequate protection.

8. Any other factor shown by the evidence bearing on this question.

On May 20, the jury returned a jury verdict in favor of Yotty and Ropp. Crawford appealed arguing the district court committed reversible error by refusing to give her requested instruction regarding the landlords' contractual obligations and statutory duties under Iowa Code section 562A.15(1).

We transferred the case to the court of appeals, and a unanimous panel reversed the ruling of the district court and remanded for a new trial. In reaching its decision the court of appeals stated that the instructions given by the court

lack any explanation of common areas or the landlord's duty in respect to the common areas. The instructions also fail to explain this duty requires the landlord to use ordinary care measured by a reasonable and prudent person in defendant's position acting under like circumstances.

We granted the landlords' application for further review.

## II. Standard of Review.

■■■■ "We review challenges to jury instructions for correction of errors at law. 'We review the related claim that the trial court should have given the defendant's requested instructions for an abuse of discretion.'" *State v. Marin,* 788 N.W.2d 833, 836 (Iowa 2010) (citations omitted); *see also In re Det. of Palmer,* 691 N.W.2d 413, 416 (Iowa 2005) ("We also review a district court's failure to give a jury instruction for an abuse of discretion."). "An abuse of discretion occurs when the court's decision is based on a ground or reason that is clearly untenable or when the court's discretion is exercised to a clearly unreasonable degree." *Pexa v. Auto Owners Ins. Co.,* 686 N.W.2d 150, 160 (Iowa 2004); *see also Summy v. City of Des Moines,* 708 N.W.2d 333, 339 (Iowa 2006).

*State v. Becker,* 818 N.W.2d 135, 140 (Iowa 2012).

## III. Discussion.

■■■■ "Under Iowa law, a court must give a requested instruction when it states a correct rule of law applicable to the facts of the case and is not embodied in other instructions." *Smith v. Koslow,* 757 N.W.2d 677, 683 (Iowa 2008). "If the concept behind the requested instruction is embodied in other instructions, the district court may properly reject the proposed instruction." *Hubbell Commercial Brokers, L.C. v. Fountain Three,* 652 N.W.2d 151, 158 (Iowa 2002). "[E]rror in refusing to give a particular instruction does not warrant reversal unless the error is prejudicial." *Id.* In other words, in order to prevail, Crawford must demonstrate that her requested jury instruction contained a correct statement of applicable law not covered by another instruction and that

the court's refusal to give her requested instruction prejudiced her.

**A. Applicable Law.** In 1978, the general assembly enacted the IURLTA. 1978 Iowa Acts ch. 1172 (codified as Iowa Code chapter 562A (1979)). The act was substantially adopted from the Uniform Residential Landlord and Tenant Act (URLTA).[1] Unif. Residential Landlord & Tenant Act (1972), 7B U.L.A. 285 (2006). The passage of the IURLTA was, in part, a codification of our ruling in *Mease v. Fox* in which we gave " 'overdue recognition ... [to] minimum housing standards' " by holding "that a residential lease contained an implied warranty of habitability." *Lewis v. Jaeger*, 818 N.W.2d 165, 179 (Iowa 2012) (quoting *Mease v. Fox*, 200 N.W.2d 791, 796–97 (Iowa 1972) (recognizing legislative policy of protecting the health, welfare, and safety of the community in the context of residential leases)); *see also* Russell E. Lovell II, *The Iowa Uniform Residential Landlord and Tenant Act and the Iowa Mobile Home Parks Residential Landlord and Tenant Act*, 31 Drake L.Rev. 253, 256–61 (1981).

Crawford's proposed instruction would have instructed the jury on certain obligations of a residential landlord under Iowa Code section 516A.15(1) (2009), as well as under the lease agreement between Smith and his landlords, Yotty and Ropp. Section 562A.15(1) provides in relevant part:

1. The landlord shall:

*a.* Comply with the requirements of applicable building and housing codes materially affecting health and safety.

*b.* Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition.

*c.* Keep all common areas of the premises in a clean and safe condition. The landlord shall not be liable for any injury caused by any objects or materials which belong to or which have been placed by a tenant in the common areas of the premises used by the tenant.

*d.* Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air-conditioning, and other facilities and appliances, including elevators, supplied or required to be supplied by the landlord.

The three instructions that Crawford asserts the district court should have given read as follows:

**[PROPOSED] INSTRUCTION NO. ▮**

---

1. At least twenty-one states have adopted the URLTA including:

Alabama, Alaska, Arizona, Connecticut, Florida, Hawaii, Iowa, Kansas, Kentucky, Michigan, Mississippi, Montana, Nebraska, New Mexico, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Virginia, and Washington. Ala.Code §§ 35–9A–101 to –603; Alaska Stat. §§ 34.03.010–.380; Ariz.Rev.Stat. Ann. §§ 33–1301 to –1381; Conn. Gen.Stat. Ann. §§ 47a–1 to –20a; Fla. Stat. Ann. §§ 83.40–.67; Haw.Rev.Stat. Ann. §§ 521–1 to –78; Iowa Code Ann. §§ 562A.1–.37; Kan. Stat. Ann. §§ 58–2540 to –2573; Ky.Rev.Stat. Ann. §§ 383.500–.715; Mich. Comp. Laws Ann. §§ 554.601–.616; Miss.Code Ann. §§ 89–8–1 to –27; Mont.Code Ann. §§ 70–24–101 to –442; Neb.Rev.Stat. Ann. §§ 76–1401 to –1449; N.M. Stat. Ann. §§ 47–8–1 to –52; Okla. Stat. Ann. tit. 41, §§ 101–136; Or.Rev.Stat. Ann. §§ 90.100–.940; R.I. Gen. Laws §§ 34–18–1 to –57; S.C.Code Ann. §§ 27–40–10 to –940; Tenn.Code Ann. §§ 66–28–101 to –521; Va.Code Ann. §§ 55–248.2 to .40; Wash. Rev.Code Ann. §§ 59.18.010–430, .900.

Melissa T. Lonegrass, *Convergence in Contort: Landlord Liability for Defective Premises in Comparative Perspective*, 85 Tul. L.Rev. 413, 475 n.53 (2010).

## DUTIES AS A LANDLORD

Plaintiff may also recover against Defendants as a Landlord. To recover the Plaintiff must prove all of the following propositions:

1. The Defendants violated their obligations in one or more particulars set forth in Instruction No. —— and No.——.

2. The violations were a proximate cause of plaintiff's damage.

3. The amount of damage.

If the plaintiff has failed to prove any of these propositions, the plaintiff is not entitled to damages. If the plaintiff has proved all of these propositions, the plaintiff is entitled to damages in some amount.

Authority: Iowa Model Jury Instruction

**[PROPOSED] INSTRUCTION NO.** █

Defendants are a landlord under Iowa law. A landlord shall:

(a) Comply with requirements of applicable building and housing codes materially affecting health and safety

(b) Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition.

(c) Keep all common areas of the premises in a clean and safe condition. The landlord shall not be liable for any injury caused by any objects or materials which belong to or which have been placed by a tenant in the common areas of the premises used by the tenant.

(d) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air-condition, and other facilities and appliances, including elevators, supplied or required to be supplied by the landlord.

Authority: Iowa Code § 562A.15

**[PROPOSED] INSTRUCTION NO.** █

Defendants are landlords in accordance with the Dwelling Unit Rental [A]greement, Plaintiff's exhibit 1. Defendants were contractually obligated as landlords to do the following:

(a) Comply with requirements of applicable building and housing codes materially affecting health and safety.

(b) Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition.

(c) Keep all common areas of the premises in a clean and safe condition. The landlord shall not be liable for any injury caused by any objects or materials which belong to or which have been placed by a tenant in the common areas of the premises used by the tenant.

(d) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air-condition, and other facilities and appliances, including elevators, supplied or required to be supplied by the landlord.

Authority: Iowa Code § 562A.9 (1)

Proposed instruction 12 and proposed instruction 13 are identical except the former states the landlords' obligations arise "under Iowa law" and the latter states the landlords' obligations arise out of the "Dwelling Unit Rental [A]greement."[2]

---

**2.** The relevant portion of the Dwelling Unit Rental Agreement states:

MAINTENANCE BY LANDLORD. Landlord shall:

(a) Comply with the requirements of applicable building and housing codes materially affecting health and safety.

Both instructions closely track the standards set forth in section 562A.15(1). When read collectively, Crawford's proposed instructions simply sought to instruct the jury that the responsibilities set forth in section 562A.15(1)(*a*)–(*d*) of the IURLTA were applicable to Crawford—a visitor of a tenant.

The landlords contend Crawford's proposed instructions did not contain a correct statement of the law because section 562A.15(1) solely sets forth a landlord's obligations with respect to tenants. According to the landlords, common law premises liability applies when an "invitee of a tenant sustains injury." Crawford counters that in light of our holding in *Koenig v. Koenig*, 766 N.W.2d 635 (Iowa 2009) a residential landlord owes a visitor of a tenant the same duties the landlord owes the tenant under section 562A. 15(1)(*a*)–(*d*).

Thus, the question presented is whether a residential landlord owes a tenant's visitor statutory duties to: "[c]omply with the requirements of applicable building and housing codes materially affecting health and safety"; "[m]ake all repairs and do whatever is necessary to put and keep the

> (b) Make all repairs and do whatever is necessary to put and keep the dwelling unit in a fit and habitable condition.
> (c) Keep all common areas of the premises in a clean and safe condition, but Landlord shall not be liable for any injury caused by any objects or materials which belong to, or which may have been placed by, a tenant in the common areas of the premises used by Tenant.
> (d) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air-conditioning, and other facilities and appliances, including elevators, supplied or required to be supplied by Landlord.
>
> The above language contained in the Dwelling Unit Rental Agreement is a near verbatim recital of the standards set forth in section 562A.15(1)(*a*)–(*d*) of the IURLTA.

premises in a fit and habitable condition"; "[k]eep all common areas of the premises in a clean and safe condition"; and maintain all facilities and appliances, including electric facilities "in good and safe working order and condition." Iowa Code § 562A.15(1)(*a*)–(*d*). In construing statutes we look to "the language and purpose of the statute, our prior cases interpreting the statute, and the persuasive authority from other jurisdictions and scholars on the topic." *State v. Meyers*, 799 N.W.2d 132, 145–46 (Iowa 2011).

■ Section 562A.2 of the IURTLA, entitled "Purposes—rules of construction," states:

1. This chapter shall be liberally construed and applied to promote its underlying purposes and policies.

2. Underlying purposes and policies of this chapter are:

*a.* To simplify, clarify, modernize and revise the law governing the rental of dwelling units and the rights and obligations of landlord and tenant; and

*b.* To encourage landlord and tenant to maintain and improve the quality of housing.

> In light of our disposition on this appeal we find it unnecessary to decide whether the landlords owed Crawford any duties pursuant to the lease agreement with Smith. However, we acknowledge that Crawford does not argue she was a party or an intended third-party beneficiary with respect to the lease agreement, and accordingly, we express doubt that Crawford was entitled to entertain a cause of action based on obligations stated therein. *See Khabbaz v. Swartz*, 319 N.W.2d 279, 284 (Iowa 1982) ("[I]n order to have standing to assert a breach of contract, a party not privy to such contract must be regarded as a direct beneficiary to the contract, and not as an incidental beneficiary." (Citation and internal quotation marks omitted.)).

*c.* To insure that the right to the receipt of rent is inseparable from the duty to maintain the premises.

Our decision in *Koenig* did not involve leased premises or otherwise interpret the statutory duties contained in the IURLTA. 766 N.W.2d at 636. Rather, that ruling, which was expressly concerned with common law duties, recognized that the common law invitee and licensee distinction in premises liability cases no longer made "sound policy" and "unnecessarily complicate[d] our law." *Id.* We abolished the common law distinction between invitees and licensees and "impose[d] upon owners and occupiers only the duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." *Id.* at 645–46 (citation and internal quotation marks omitted). Two of the primary rationales underlying our ruling in *Koenig* were "avoid[ing] confusion" and "recogniz[ing] a higher valuation of public safety over property rights." *Id.* at 643, 645.

■ In *Reuter v. Iowa Trust & Savings Bank,* another case interpreting a landlord's common law duties to a legal visitor, we stated:

It is the generally accepted rule that a landlord who rents separate parts of his premises to a number of different tenants permitting them to use in common various parts of the property which are not included in the various leases will be presumed to have retained control of

these 'common parts of the premises' as to which he will be in the position of a general owner of land who invites or permits others to use his premises, owing a duty of reasonable care to keep the property in a reasonably safe condition for the contemplated use. *This duty is the same to an invitee as to a tenant.*

244 Iowa 939, 940, 57 N.W.2d 225, 226 (Iowa 1953) (emphasis added) (citations omitted). The principle stated in *Reuter* is not expressly displaced by chapter 562A. *See* Iowa Code § 562A.3 ("Unless displaced by the provisions of th[e IURLTA], the principles of law and equity in this state ... shall supplement its provisions."). Thus, under our common law, the duties a landlord owes to a tenant extend to the visitors of the tenant, at least in regard to common areas. *Id.* We acknowledge a legitimate argument could be made that a landlord's breach of any of the statutory duties set forth in section 562A.15(1)(*a* )– (*d* ) could result in an unreasonable risk of harm to lawful visitors on the premises.

We also acknowledge that as a whole, Iowa Code subsection 562A.15(1) is nearly identical to section 2.104(a) of the URLTA.[3] Both sections require a landlord to keep "all common areas of the premises in a clean and safe condition." Iowa Code § 562A.15(1)(*c* ); Unif. Residential Landlord & Tenant Act § 2.104(a)(3), 7B U.L.A. 326. Section 2.104 of the URLTA is accompanied by the following comment:

(4) maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air-conditioning, and other facilities and appliances, including elevators, supplied or required to be supplied by him.

Unif. Residential Landlord & Tenant Act (1972), § 2.104, 7B U.L.A. 326 (2006).

---

3. The relevant portions of Section 2.104 read as follows:

(a) A landlord shall

(1) comply with the requirements of applicable building and housing codes materially affecting health and safety;

(2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition;

(3) keep all common areas of the premises in a clean and safe condition;

Vital interests of the parties and public under modern urban conditions require the proper maintenance and operation of housing . . . .

. . . .

Standards of habitability dealt with in this section are a matter of public police power rather than the contract of the parties or special landlord-tenant legislation. This section establishes minimum duties of landlords consistent with public standards.

Unif. Residential Landlord & Tenant Act § 2.104 cmt., 7B U.L.A. 327–28. By describing the standards set forth in section 2.104 as a matter of "public police power rather than the contract of the parties" the drafters of the URLTA arguably implied that the protections contained in section 2.104 were never intended to be limited to tenants but were also intended to protect visitors from the type of harm suffered in this case.

Under section 562A.4(1) "[t]he remedies provided by [the IURLTA] shall be administered so that the aggrieved party may recover appropriate damages." Iowa Code § 562A.4(1). The analogous section of the URLTA, on which the IURLTA was heavily based, contains virtually identical language. *See* Unif. Residential Landlord & Tenant Act § 1.105(a), 7B U.L.A. 295 ("The remedies provided by this Act shall be so administered that an aggrieved party may recover appropriate damages."). The corresponding comment states:

Subsection (a) is intended to negate unduly narrow or technical interpretation of remedial provisions and to make clear that damages must be minimized. The use of the words "aggrieved party" is intended to indicate that in appropriate circumstances rights and remedies may extend to third persons under this Act or supplementary principles of law. *Id.* § 1.105(a) cmt.

A plausible argument can be made that a visitor of a tenant who is injured by the landlord's failure to maintain common areas is a predictable "third person" within the contemplation of the comment, and thus, a visitor such as Crawford would be an "aggrieved party" entitled to enforce the duties set forth under the Act. *Cf. State v. Hearn,* 797 N.W.2d 577, 583 (Iowa 2011) (declining "to confine the reach of [a] statute in . . . a narrow fashion" where the legislature fails to use "words of limitation"). Indeed, appellate courts in other jurisdictions that have adopted the URLTA or an analogous statutory scheme have employed similar reasoning in extending protections to lawful visitors of a tenant. *See, e.g., Kunst v. Pass,* 288 Mont. 264, 957 P.2d 1, 6 (1998); *Humbert v. Sellars,* 300 Or. 113, 708 P.2d 344, 347 (1985) (holding that Oregon's Residential Landlord and Tenant Act extends the landlord's liability to "a tenant's guest who is injured by a landlord's failure to maintain the premises in a habitable condition, if the tenant herself could recover damages for the same injury"); *see also Shump v. First Cont'l–Robinwood Assocs.,* 71 Ohio St.3d 414, 644 N.E.2d 291, 296 (1994) (holding that obligation to comply with safety codes imposed on landlords under Ohio's Landlord and Tenant Act extends "to other persons lawfully upon the leased premises."). *But see Miller v. Cundiff,* 245 S.W.3d 786, 789 (Ky.Ct.App.2007) (finding that Kentucky's version of the URLTA does not provide a basis for personal injury claims even by tenants).

On the other hand, Article IV of the IURLTA entitled "Remedies," lists the remedies of "Tenants" in part one and the remedies of "Landlords" in part two. *See* Iowa Code §§ 562A.21–.33. Had the legis-

lature intended for the IURLTA to impose statutory duties on landlords for the benefit of lawful visitors that may be enforced through awards of damages, they could have expressly done so in Article IV of the IURLTA. *See, e.g., Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 812 (Iowa 2011) (setting forth principle of statutory construction which presumes that if the legislature intended a certain result in a statute "it would have expressly said so"). We acknowledge there is some disagreement among other jurisdictions regarding the applicability of comparable Landlord/Tenant statutes to visitors. *Compare Kunst*, 957 P.2d at 6, *with Miller*, 245 S.W.3d at 789. However, for the reasons discussed below, we need not decide whether section 562A.15(1)(*a*)–(*d*) of the IURLTA imposes statutory duties that are applicable to visitors of tenants. Therefore, we decline to answer the question of whether Crawford's proposed instructions contained correct statements of the law.

**B. Instructions Already Given and Prejudice.** Crawford was only entitled to her requested instructions if the concepts stated therein were not embodied by other instructions and the failure of the district court to give her requested instructions prejudiced her rights. *Hubbell*, 652 N.W.2d at 158; *see also Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 569 (Iowa 1997) ("An erroneous instruction does not entitle the party claiming error to reversal unless the error was prejudicial."). As set forth above, Crawford requested an instruction telling the jury that under Iowa Code section 562A.15(1)(*a*)–(*d*) the landlord was obligated to keep the common areas in a clean and safe condition, make repairs and maintain a fit and habitable condition, maintain electrical appliances, and comply with applicable building and housing codes.

The district court's instruction number 17 instructed the jury that the landlord was negligent if he "[f]ail[ed] to maintain the[ ] premises in a reasonably safe condition, or . . . [f]ail[ed] to exercise reasonable care in the maintenance of the[ ] premises for the protection of lawful visitors." A side by side reading of the statutory duty to "[k]eep all common areas . . . in a clean and safe condition" and the common law duty contained in the district court's instruction reveals that the two principles are decidedly analogous. Iowa Code § 562A. 15(1)(*c*).

Nevertheless, as the court of appeals pointed out, the district court's instruction lacked any explanation of common areas or a landlord's duty with respect thereof. However, the district court's instruction directed the jury to find the landlord negligent if he failed to maintain the premises in a reasonably safe condition. Common areas are necessarily encompassed within the term "the premises." *See Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 686 (Iowa 1990) (affirming trial court's refusal to give defendant's requested instruction when the court's instruction "obviously encompasse[d] the situation postulated by" the requested instruction). Based on the evidence presented and the strategy of the parties, the jury would have clearly understood that the landlords were responsible for maintaining the stairwell at issue and should be held liable if they failed to maintain the stairwell in a reasonably safe condition.

The question of whether the stairwell was a common area was not a disputed issue. Therefore, further explanation regarding common areas was unnecessary and could even have had the unintended effect of confusing the jury. It was within the district court's discretion to choose the language it believed would most fairly cover the issues presented. *See Norton v.*

*Adair County,* 441 N.W.2d 347, 358 (Iowa 1989); *see also State v. Robinette,* 216 N.W.2d 317, 318 (Iowa 1974).

The court of appeals also found that the district court's instruction failed to explain that the duty with respect to common areas "requires the landlord to use ordinary care measured by a reasonable and prudent person in defendant's position acting under like circumstances." First, this purported omission was not claimed as error by Crawford on appeal. Second, the instructions that Crawford claims the district court erred in excluding did not contain this specific explanation of how to measure the standard of care either.

Third, the district court's instruction number 13 informed the jury:

"Negligence" means failure to use ordinary care. Ordinary care is care which a reasonably careful person would use under similar circumstances. "Negligence" is doing something a reasonably careful person would not do under similar circumstances, or failing to do something a reasonably careful person would do under similar circumstances.

Thus, in actuality, the district court instructed the jury on how to measure ordinary care in virtually the exact terms articulated by the court of appeals.

Again the question of whether the injury occurred in a common area was not in dispute. When the district court's instructions are read together, it is clear the jury was adequately informed that the landlord was required to exercise ordinary care with respect to the stairwell where the injury occurred. *See Sanders v. Ghrist,* 421 N.W.2d 520, 522 (Iowa 1988) ("[I]nstructions must be read and construed together, not piecemeal or in artificial isolation.").

The court of appeals also expressed concern that the district court only instructed the jury that the landlord had a duty to "maintain" the premises, but it was unclear the landlord had an affirmative duty to make the premises safe by installing a handrail. According to the court of appeals, there was no handrail to maintain and from the instruction the jury would not have understood that the landlord may have had a duty to install one.

If this reasoning is correct, plaintiffs in countless premises liability cases have long been receiving defective jury instructions in Iowa. The duty to exercise reasonable care is itself, an affirmative duty. · *See, e.g., LaSell v. Tri–States Theatre Corp.,* 233 Iowa 929, 946, 11 N.W.2d 36, 45 (Iowa 1943) ("[A]n owner or occupant of buildings or premises ... owes an active, affirmative duty to such persons to use reasonable, ordinary, care to keep such premises in a reasonably safe condition."); *see also Spechtenhauser v. City of Dubuque,* 391 N.W.2d 213, 215–16 (Iowa 1986) (holding that, under the circumstances, a city had an "affirmative duty" to exercise reasonable care to inspect sidewalks). Nonetheless, in *Koenig,* we did not direct district courts to develop an instruction which explains the affirmative nature of the duty to exercise reasonable care. 766 N.W.2d at 645–46. Rather, we thought it sufficient for district courts to develop a "direct, simple instruction" explaining a landowner's "duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." *Id.*

We think the court of appeals advanced an overly narrow interpretation of the word "maintain" as it appears in instruction numbers 17 and 19. Specifically, the court of appeals reasoned that an instruction regarding the duty to "keep all common areas of the premises in a clean and safe condition" under section 562A.15(1)(*c*) would better connote the affirmative nature of the landlord's duty. However,

"keep" as it is used in section 562A.15(1)(c) does not logically imply affirmative obligations greater than those suggested by the term "maintain."

The *Merriam–Webster Collegiate Dictionary* defines "keep" as "to maintain in a good, fitting, or orderly condition." *Merriam–Webster's Collegiate Dictionary* 637 (10th ed.2002). *Black's Law Dictionary* defines "maintain" as to "care for (property) ...; to engage in general repair and upkeep." *Black's Law Dictionary* 1039 (8th ed.2009). The first definition for "maintain" in the *Merriam–Webster* is "to keep in an existing state." *Merriam–Webster's Collegiate Dictionary* 700. As demonstrated by their dictionary definitions, "keep" and "maintain" are common words which are virtually synonymous in their ordinary usage. *See, e.g., Hubbell,* 652 N.W.2d at 158 (upholding district court's ruling declining to instruct the jury on the meaning of the word "exclusive" where the term was "not used in a technical manner peculiar to the law"). Thus, it is unlikely the jury would have had an enhanced understanding of the landlords' affirmative duty in this case had the district court's instruction used the terminology "keep [the] common areas ... in a safe ... condition" instead of the terminology "maintain their premises in a reasonably safe condition."

We acknowledge that proposed instructions 12 and 13 would have also informed the jury of the landlords' obligation "*to put* and keep the premises in a fit and habitable condition" under section 562A.15(1)(b) (emphasis added). Arguably, the phrase "to put" better conveys the landlords' affirmative duty to create safe conditions. Nonetheless, an ordinary reading of the relevant instructions would have reasonably alerted the jury regarding the affirmative obligations the landlords had to undertake in order to fulfill the duty to make the premises safe for lawful visitors.

As the court of appeals acknowledged, the language in instruction numbers 17 and 19 was sufficient to inform the jury of the landlords' duty to remove ice from the stairwell as this would amount to a matter of maintenance. Notably, because the trial dealt with an injury that occurred on a rental property, the jury was likely to associate the term "maintain" with the landlords' maintenance duty to make the premises safe by undertaking acts such as installing handrails, snow removal, and deicing stairwells. Additional instructions to this effect were unnecessary. *See, e.g., Schuller v. Hy–Vee Food Stores, Inc.,* 328 N.W.2d 328, 332 (Iowa 1982) (holding that the district court's instruction submitting the issue of whether defendant was negligent "in placing the ashtray stand in an aisle where customers were expected to walk" adequately incorporated plaintiffs' other three specifications similarly alleging negligence in the placement of the stand).[4]

---

4. Perhaps a more persuasive argument in support of the proposed instruction would have been that the proposed instruction actually imposed a higher standard of care by omitting the term reasonably. However, Crawford did not make this claim below or on appeal. In any event, we are doubtful that section 562A. 15(1)(c) imposes a standard of care more unqualified than maintenance of the premises "in a reasonably safe condition." We have previously interpreted section 562A.15(1) as containing an element of reasonableness and declined to impose liability where the landlord's conduct was not unreasonable. *See Estate of Vazquez v. Hepner,* 564 N.W.2d 426, 431 (Iowa 1997) ("[S]ection 562A.15 ... is not intended to hold landlords strictly liable for any defect that causes injury to a tenant."). In her appellate brief, Crawford herself describes the district court's error as a failure "to account for Defendants' statutory and contractual duties to maintain a *reasonably* safe premise." Appellant Br. 12 (emphasis added). We would be inclined to agree with Crawford's characterization of the landlords' statutory duty. *See Iowa Elec.*

Of critical significance, the district court's refusal to give Crawford's proposed instructions did not prevent Crawford's attorney from advancing his theory of the case to the jury in a manner that would allow the jury to reach the merits on the specific aspects of Crawford's claims. *See, e.g., Moose v. Rich,* 253 N.W.2d 565, 571 (Iowa 1977) (affirming district court's ruling on jury instructions where the instructions given by the court, albeit paraphrased, fairly presented the party's theory of the case). We must acknowledge that Crawford's exhibit one was the lease agreement, which contained the exact obligations which Crawford claims the jury was unable to consider. Yet, in closing argument, Crawford's attorney was able to direct the jury to consult the lease agreement during its deliberations and to regard any violation of its terms as evidence of negligence.

The following excerpts from closing argument demonstrate the ability of Crawford's attorney to contextualize the specific aspects of Crawford's claims with precision.

The law is that a landowner and a landlord have to take reasonable steps to keep their premises safe for the public....

. . . .

... [T]heir lights were not working.... "There were no fixtures installed, correct?" "Correct." "But there was wiring there?" "Correct."

... [I]n six to seven years, what was their response to the fact that there's no lights for these stairways? "We talked about lighting." He's talking about we, the landlords. "There was a wire there, but we never got one on." "What was that wiring for?" "There was a wire for a light. We just never got it put up." . . .

... "Was there a railing of any kind installed on the wall of the apartment building or on the other side of the staircase going downstairs on February 22 of 2008?" Answer, "No." So what was their conduct? They never took care of the walks, they ignored the fact there was no lighting, and they failed to put up any railings. And my question is—or another way to look at this—what did they do to maintain the premises safe[ly]?

. . . .

But then you have to add in—[n]ow, this isn't just a case where the steps were unsafe; it's not just that, it's that there's no light. It's that there's no railing. Because even if the steps were unsafe, a person could have been able to perceive it, possibly, had there been proper lighting. A person may have been able to save [her]self had there been a way to catch yourself. So this isn't a case where they put up the lighting, they put up the rail, and the person comes in and falls....

. . . .

... They didn't maintain lighting, they didn't maintain the rail, and they didn't maintain the steps.

. . . .

Simple truths. Did the landlords take reasonable steps? No. They did not. They couldn't even put up a light in seven years. But they want you, as citizens of the community, to say, "She should have seen it. And even if she didn't see it, she should have caught

*Light & Power Co. v. Gen. Elec. Co.,* 352 N.W.2d 231, 239 (Iowa 1984) (citing Iowa Code § 562A.15(1)(*c* ) and explaining that defendant's "liability-producing conduct consisted entirely of its failure to perform the duty imposed by law on a landlord to maintain the premises in a *reasonably* safe condition" (emphasis added)).

herself. One, two, three: Steps, light, rail. This isn't just one thing.

. . . .

. . . But the standard is still so simple. Make it safe. Don't make it perfect, don't put up blaring signs, "Steps, steps, steps", lights underneath the steps, floodlights onto the steps. Don't make it perfect. Just—you know, just do a couple little things. Keep it clean. Keep it lit. And put up a rail. And fix the deck where the water's falling off onto the steps. For goodness gracious."

Trial Tr. 447–502.

Crawford never sought to demonstrate that the landlord violated any of the applicable building and housing codes materially affecting health and safety. Iowa Code § 562A.15(1)(*a*). None of the specifications contained in Crawford's other instructions contained specific rules but rather repeated and emphasized concepts that do not deviate from the reasonable care standards contained in the district court's instructions in any significant way. *See, e.g., Sonnek v. Warren,* 522 N.W.2d 45, 50 (Iowa 1994) ("[I]nstructions should not give undue emphasis to any phase of the case favorable to either side, and even correct statements of the law, if repeated to the point of undue emphasis, may constitute reversible error." (citation and internal quotation marks omitted)).

In regards to the lighting in the stairwell, the landlords presented evidence that the area was covered by an automatic spotlight which illuminated the area when light levels were low. We think it probable the jury simply accepted this evidence and relatively unlikely the jury did not understand that the landlord had affirmative obligations "to put . . . the premises in a fit and habitable condition" and to "[m]aintain in good and safe working order and condition all electrical . . . facilities

and appliances." Iowa Code § 562A(1)(*b* ), (*d* ).

■■■ The concepts Crawford sought to instruct the jury on were contemplated by the "*common sense notions of reasonable care*" that the jury normally considers "in assessing liability." *Koenig,* 766 N.W.2d at 646. We are confident that the jury reached the merits on the specific aspects of Crawford's claims and doubtful that submission of her proposed instruction would have changed the outcome in the case. When the principles of law contained in the requested instructions are adequately embodied in the instructions given by the district court, we will not reverse the ruling of the district court simply because we would have chosen different language. *Osterfoss v. Ill. Cent. R.R.,* 215 N.W.2d 233, 235 (Iowa 1974); *see also Sonnek,* 522 N.W.2d at 47 (declining to reverse for "marginal" omissions when instructions given "thoroughly and fairly convey[ed] the law applicable to the issues presented"); *Schuller,* 328 N.W.2d at 332 ("The court is entitled to choose its own language in submitting an issue and need not adopt the form requested by a party."). For all these reasons, we conclude the instructions were not prejudicial and adequately encompassed Crawford's theory of the case.

## IV. Conclusion.

We conclude that the legal concepts contained in Crawford's requested instructions were adequately embodied in other instructions given by the district court. Therefore, the district court was entitled to reject Crawford's proposed instructions.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**