# IN THE SUPREME COURT OF IOWA

No. 20–1549

Submitted October 12, 2022—Filed April 7, 2023

**STATE OF IOWA,**

   Appellee,

vs.

**SANTOS RENE TORRES,**

   Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Warren County, Brendan Greiner (suppression motion); Kevin Parker (bench trial), District Associate Judges.

Defendant seeks further review of court of appeals decision affirming his conviction for operating while intoxicated and rejecting his challenge to a warrantless entry into his home. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Waterman, J., delivered the opinion of the court, in which Christensen, C.J., and Mansfield, Oxley, and McDermott, JJ., joined. McDonald, J., filed a special concurrence. May, J., took no part in the consideration or decision of the case.

Benjamin D. Bergmann (argued) of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann L.L.P., Des Moines, for appellant.

Brenna Bird, Attorney General, Genevieve Reinkoester (argued), Assistant Attorney General, for appellee.

**WATERMAN, Justice.**

In *State v. Abu Youm*, ___ N.W.2d ___ (Iowa 2023), decided today, we harmonized *Caniglia v. Strom*, 141 S. Ct. 1596, 1599 (2021), with precedent allowing police to enter a home without a warrant under exigent circumstances. In this appeal, we determine whether police needed a warrant to enter a home to assist (and protect) a social worker investigating child endangerment. The defendant was drinking at a local establishment when a phone call from his wife prompted him to rush home. She had been arrested for child endangerment and was handcuffed in a squad car when he arrived. Officers suspected he was intoxicated and knew he was agitated. They followed him inside where a lone social worker was interviewing three young children. He was arrested for operating a motor vehicle while intoxicated, second offense; harassment of a public official; and interference with official acts.

He moved to suppress evidence on the grounds that the police violated his rights under the Fourth Amendment and Iowa Constitution by seizing him and entering the home without a warrant. The district court denied his motion and convicted him in a trial on the minutes of testimony. He appealed, and we transferred the case to the court of appeals, which affirmed over a dissent. We granted the defendant's application for further review.

On our review, we determine that the police did not seize the defendant before he entered the home and their warrantless entry was justified to protect and assist the social worker under the exigent circumstances. We affirm the denial of his motion to suppress and his conviction.

**I. Background Facts and Proceedings.**

On the evening of June 27, 2019, a 911 caller reported a small child hanging out of a second-story window of a home in Carlisle. The window was only partially covered by a broken screen. Officer Zach Buehrer of the Carlisle Police Department responded to the call and spoke with the child's mother, who became aggressive. Officer Buehrer notified the Iowa Department of Human Services (DHS) and arrested the mother. Officer Buehrer requested backup to help him handle the scene, which included three children, ages nine, six, and four; the children's grandmother; a responding social worker from DHS; and the mother who had been arrested. Warren County Sheriff's Deputy Derek Konrad arrived and helped corral the children who were running in and out of the house.

The mother called her husband, Santos Rene Torres, and told him that she had been arrested at their home. Torres drove home from a restaurant where he had been drinking. Officers met Torres upon his arrival and told him where to park his truck to avoid blocking traffic. Torres was agitated and uncooperative, and officers suspected that he had been drinking. Accompanied by the officers, Torres approached the squad car in which his wife was secured. After a brief conversation, Officer Buehrer put his hand on Torres's shoulder and said, "Let's go," to move him away. Torres remained free to move about and walked inside the house. Officer Buehrer knew the social worker from DHS was inside investigating the child endangerment incident and thought it best to keep an eye on Torres. Officer Buehrer followed Torres inside without being invited in or told not to enter.

Inside, Torres's mother-in-law was looking after the children while Kate Roy, a Child Protective Worker (CPW) with DHS, interviewed them. Deputy Konrad also entered the home to assist with the children so that they would not interrupt the conversation or wander out of the house. Torres walked around inside, accompanied by an officer. After Torres spent time alone in a bathroom, Officer Buehrer patted him down for weapons. When Torres spoke to Roy, she noticed he was blinking and speaking slowly, leaning forward, and appeared to have bloodshot eyes. Roy asked Torres if he was under the influence of any substances; Torres said no. Deputy Konrad also noticed that Torres smelled of alcohol, his eyes were bloodshot, and his speech was slurred.

Deputy Konrad asked Torres to step outside for field sobriety tests. Torres and Deputy Konrad went outside, but Torres refused to perform the sobriety tests. Torres admitted, however, that he had had been drinking before he drove home. As Deputy Konrad began to handcuff Torres, he resisted and reached deep into his front pants pocket with a free hand. Other officers helped subdue Torres, handcuff him, and place him in the back of Deputy Konrad's squad car. Torres repeatedly called Deputy Konrad a racist and said, "Racist cops like you are why people kill cops." Torres refused a preliminary breath test. Torres was advised he was under arrest and was read his *Miranda* rights.

Torres was charged with operating while intoxicated, second offense. *See* Iowa Code § 321J.2(2)(*b*) (2019). Torres stipulated that he previously had been convicted of operating while intoxicated. He was also charged with two simple

misdemeanors: harassment of a public official and interference with official acts. *See id.* § 718.4; *id.* § 719.1(1)(*b*).

Torres filed a motion to suppress evidence that he argued was collected in violation of the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. At the suppression hearing, he contended that he was illegally seized, that the officers lacked grounds to enter his home without a warrant, and that evidence of his statements and observations of his intoxication should be suppressed. The district court denied Torres's motion. In its ruling, the district court considered both the community caretaking exception and exigent circumstances to justify the officers' warrantless entry into Torres's house:

> In responding to a call for a child hanging out of a second story window, the officers had every reason to enter the home to assess the safety of the children. The officers were exercising a bona fide community caretaking function when they did so. The Court additionally finds the officers were entering the home under exigent circumstances such that a failure to enter the home might subject the child to harm or neglect. The exigency continued after the officers took the mother into custody and DHS attempted to find a suitable parent or placement for the children. . . .

> Officers clearly had reasonable suspicion the defendant was under the influence of alcoholic beverage once he exited his car and began his interaction with the officers. The officers continued with their community caretaking responsibilities by remaining with the defendant as he was interviewed by DHS. The Court believes, under these circumstances, it was incumbent upon the officers to remain near the defendant; the defendant was suspected of being intoxicated, responded to a child endangerment investigation, and most importantly, was visibly agitated at the prospect of his children being removed. In fact, the officers would have been derelict in their duty to leave the defendant unattended in this situation.

> . . . The children were still in the presence of the home during the Department's investigation. Therefore, officers were still acting

within their *community caretaking* function by assisting Ms. Roy in finding a placement for the children while the mother was in custody.

Torres waived his right to a jury trial, and the case proceeded to a bench trial on the minutes of testimony. The district court found Torres guilty and sentenced him to two years in prison with all but seven days suspended and credit for seven days served.

Torres appealed, and we transferred the case to the court of appeals. In his appellate brief, Torres emphasized the seizure issue, arguing that he was seized without reasonable suspicion from the moment officers told him where to park his truck. On that ground, Torres argued that the district court should have suppressed evidence of his intoxication. His initial appellate brief argued the police lacked justification to enter his home without a warrant, and argued the district court erred in finding "that officers were engaged in community caretaking by seizing Mr. Torres and in entering Mr. Torres's home." *Caniglia* was decided after his appellate proof brief was filed, and both the State's brief and Torres's reply brief argued *Caniglia.*

The court of appeals affirmed his conviction over a dissent. The majority determined that Torres was not seized or subjected to a custodial interrogation before entering his home and that the police were justified in following him inside to protect the social worker:

> As the State explains, the officers did not enter the house to search or seize evidence. Instead, Officer Buehrer followed Torres inside to ensure everyone's safety and Deputy Konrad entered the home to mind the children while Roy spoke to Torres. In the throes of the child-endangerment investigation, that law enforcement

response was prudent and did not violate Torres's rights under the Fourth Amendment.

The majority also found the evidence sufficient to affirm his conviction.

The dissenting judge relied on *Caniglia* to conclude the officers' warrantless entry into the home could not be justified by exigent circumstances or under the community caretaking exception to the warrant requirement. Torres applied for further review, emphasizing the warrantless entry issue, and quoted the dissenting judge arguing that *Caniglia* foreclosed the officers' ability to enter his house without a warrant. We granted Torres's application for further review.[1]

**II. Standard of Review.**

We exercise our discretion to limit our review to (1) the seizure and (2) the warrantless entry issue. The court of appeals decision shall stand as the final opinion in this appeal on (1) the custodial interrogation claim under the Fifth

---

[1]We respectfully disagree with our colleague's conclusion that Torres forfeited his claim that the warrantless entry into his home by police was unjustified. Torres did argue he was first seized outside the home, but we cannot only address that issue and go no further, as our colleague urges. The issues are intertwined. *See Feld v. Borkowski*, 790 N.W.2d 72, 84–85 (Iowa 2010) (Appel, J., concurring in part and dissenting in part) (finding "no insurmountable obstacle" to reviewing two intertwined issues where the district court had ruled on both and the factual record was adequately developed). Indeed, Torres went on to argue that he was seized inside his home. The State's appellate brief nowhere argued that Torres forfeited the issue of warrantless entry. Rather, the State acknowledged Torres's alleged constitutional violations raised in district court and on appeal included that he was seized inside his home when officers entered without a warrant or his permission. The State argued the district court correctly denied Torres's motion to suppress, in part because "exigent circumstances permitted the officers to enter the home." Torres, having raised the claim below, is free to support it on appeal with additional legal arguments, including cases decided while his appeal is pending. We "distinguish[] between a claim, which must be raised below and argued in briefs on appeal, and an argument in support of a preserved claim." *Feld*, 790 N.W.2d at 84. The court of appeals decided the warrantless entry claim without questioning forfeiture, and as the dissenting judge observed, Torres "explicitly challenged every aspect of the officers' interactions with him, thereby preserving error." At oral argument in our court, Torres's counsel continued to stress that he was seized before entering his home, but counsel made clear Torres was *not* abandoning his unlawful warrantless entry claim.

Amendment and (2) the sufficiency of the evidence. *See State v. Montgomery*, 966 N.W.2d 641, 649 (Iowa 2021).

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Hauge*, 973 N.W.2d 453, 458 (Iowa 2022) (quoting *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019)). "We review the entire record to independently evaluate the totality of the circumstances . . . ." *Id.* "[W]e give deference to the district court's fact findings due to its opportunity to assess the credibility of the witnesses, but we are not bound by those findings." *Id.* (quoting *State v. Brown*, 890 N.W.2d 315, 321 (Iowa 2017)). "In seeking to sustain an exception to the warrant requirement, the state bears the burden of proof." *State v. Wilson*, 968 N.W.2d 903, 909 (Iowa 2022).

**III. Analysis.**

**A. Whether Officers Made an Unreasonable Seizure of Torres.** Torres argues that he was unreasonably seized in violation of his Fourth Amendment rights and article I, section 8 of the Iowa Constitution prohibiting unreasonable searches and seizures. *See State v. Naujoks*, 637 N.W.2d 101, 107 (Iowa 2001).[2]

We first address when Torres was seized. The question of seizure considers the totality of the circumstances and turns on whether a reasonable person in those circumstances would feel free to leave. *United States v. Mendenhall*, 446 U.S. 544, 553–54 (1980). "The defendant has the burden of proof as to whether

---

[2]Torres does not argue for a separate analysis under article I, section 8 of the Iowa Constitution.

a seizure occurred." *State v. Fogg*, 936 N.W.2d 664, 668 (Iowa 2019). We conclude that Torres was not seized before he entered the house.

Torres argues that he was seized as soon as officers told him where to park his truck. He relies on *United States v. Beauchamp*, 659 F.3d 560, 566–67 (6th Cir. 2011). According to Torres, officers seized him by directing his actions on a street where two squad cars were already parked in a manner that restricted the flow of traffic. We disagree. *Beauchamp* is easily distinguished on its facts. There, an officer instructed Beauchamp to stop and come meet him where he was standing so that he could question him. *Id.* at 566. By contrast, Torres drove himself to the scene. The dashcam video shows that the street on which Torres lives is narrow—passing vehicles slowly edge by the parked squad car. A reasonable driver would not mistake police direction where to park as a seizure. We have no doubt that fans attending a basketball game at Hilton Coliseum do not think they are being seized by traffic control officers directing them where to park.

Next, Torres argues he was seized while he spoke to his wife who sat handcuffed in a squad car. Officer Buehrer put his hand on Torres's shoulder and told him, "Let's go," three times. Torres contends he was seized by this application of physical force. He relies on *California v. Hodari D.*, 499 U.S. 621, 629 (1991). We disagree. First, *Hodari D.* involved a suspect who was fleeing police; Torres made no attempt to flee. *See id.* at 622–23. Second, *Hodari D.* involved police who were attempting to confine a suspect in one place for

investigatory purposes; Torres was free to move about. *See id.* at 623. Third, the hand on Torres's shoulder differs from the tackle in *Hodari D. See id.*

> [P]hysical contact is acceptable if it is consensual, "a normal means of attracting a person's attention" or obviously serves some nonseizure purpose. And a seizure does not occur merely because the officer has for some understandable reason requested that the encounter be moved to a different yet nonintimidating location.

4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.4(a), at 600–01 (6th ed. 2020) (footnotes omitted); *see also Martinez v. Nygaard*, 831 F.2d 822, 826–27 (9th Cir. 1987) (holding contact on shoulder to get attention was not a seizure); *United States v. Collis*, 766 F.2d 219, 220–21 (6th Cir. 1985) (per curiam) (tapping the arm, displaying law enforcement credentials, and requesting a move to a different public location was not a seizure). A hand on the shoulder is a normal means of getting attention that may be employed by any sensible person, whether peace officer or not. And the officers' intent to move Torres to another location *on his own property* is a "nonintimidating location."

The relevant inquiry is whether a reasonable person in view of all the circumstances would feel free to leave. *Mendenhall*, 446 U.S. at 554. Here, Torres's own characterization of the police officers' actions is telling. Torres complains that officers "followed" him around his yard and into his house, but Torres came to the scene of his own volition and continued to chart his own path on his own property. Police did not seize him by shadowing his movements.

Under these circumstances—the direction where to park, the hand on the shoulder, and the shadowing him around the house—we conclude that a

reasonable person in Torres's position would have felt free to leave up until the pat-down search after his bathroom visit. Police have the prerogative to control the scene of an ongoing investigation. *Am. C.L. Union of Ill. v. Alvarez*, 679 F.3d 583, 607 (7th Cir. 2012). "[A] sensible person would not expect a police officer to allow people to come and go freely from the physical focal point of an investigation into faulty behavior or wrongdoing." *Brendlin v. California*, 551 U.S. 249, 257 (2007). In this case, that scene and focal point necessarily includes the area where the officers parked their vehicles, where Torres's wife was detained, and where the DHS child endangerment investigation was ongoing. Those places include the street, the yard, and the interior of the home. Not to mention Torres was literally on his home turf and was allowed to walk around. We hold that Torres was not seized until after he entered his home and emerged from the bathroom.

Upon exiting the bathroom, officers patted Torres down. A pat down is a seizure for Fourth Amendment purposes. *Terry v. Ohio*, 392 U.S. 1, 19 (1968). This "*Terry*" seizure must be supported by reasonable suspicion that the subject is concealing weapons or contraband. *See id.* at 21–22.

In our view, the officers had a reasonable suspicion to pat Torres down when he exited the bathroom. Torres knows his home better than anyone, and it is reasonable to believe that he might have a weapon concealed in his bathroom. Weapons can be conveniently concealed under linens[3] or behind the

---

[3] *See, e.g., United States v. Lewitzke*, 176 F.3d 1022, 1029 (7th Cir. 1999) (discussing the location of defendant's hidden firearms, including "behind towels and sheets in a bathroom closet").

toilet[4] until they are retrieved. Torres remained inside the bathroom for a significant amount of time where he could not be seen. Torres remained agitated when he emerged. Under the totality of the circumstances, we conclude that the officers possessed the requisite reasonable suspicion to pat him down for weapons.

**B. Whether an Exception to the Warrant Requirement Justifies the Warrantless Entry into Torres's House.** We next decide whether the warrantless entry into the house was unconstitutional under these circumstances. "[P]olice intrusion into the home implicates the very core of the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution." *Wilson*, 968 N.W.2d at 911. Few exceptions will allow police to intrude into the home. *Id.* at 913. The district court relied on the community caretaking exception and exigent circumstances to reject Torres's challenge to the warrantless entry into his home. *See Cady v. Dombrowski*, 413 U.S. 433, 441 (1973).

On further review, Torres relies on *Caniglia* to argue exigent circumstances did not exist because his mother-in-law was tending to the children. *See* 141 S. Ct. at 1603–05 (Kavanaugh, J., concurring) (noting that *unattended* children inside a home can create exigent circumstances). *Caniglia* is factually inapposite. In *Caniglia*, the house was unoccupied at the time of the search, and the individual who presented a risk of harm had left in an ambulance. *Id.* at

---

[4]*See, e.g.*, *The Godfather (3/9) Movie CLIP – Killing Sollozzo and McCluskey (1972) HD*, YouTube (Nov. 22, 2011), https://www.youtube.com/watch?v=ppjyB2MpxBU.

1598 (majority opinion). By contrast, Torres entered his home when a child endangerment investigation was in progress and a lone, female social worker was interviewing the three young children inside. Police have a statutory duty to protect and assist social workers conducting child endangerment investigations in the family home. *See* Iowa Code § 232.71B(3)(*a*). The officers had reason to believe Torres was intoxicated and belligerent and posed a risk to the safety of CPW Roy and to the integrity of her investigation.

In *Abu Youm*, ___ N.W.2d at ___, we explain how exigent circumstances may continue to justify a warrantless entry into a home after *Caniglia*. Most notably, on remand for reconsideration in light of *Caniglia*, the United States Court of Appeals for the Eighth Circuit reaffirmed that exigent circumstances justified a warrantless entry to protect children inside a Dubuque home. *United States v. Sanders*, 4 F.4th 672, 678 (8th Cir. 2021) (determining "the officers reasonably believed that [warrantless] entry was necessary to either provide emergency assistance to the child who was heard crying or to prevent an imminent assault"). Other courts have held that officers' warrantless entries are justified by exigent circumstances after *Caniglia*. *See, e.g.*, *Gaetjens v. City of Loves Park*, 4 F.4th 487, 493 (7th Cir. 2021) (holding that emergency aid exception justified warrantless entry for a wellness check); *Gonzalez v. Scaletta*, No. 17–cv–7080, 2021 WL 4192065, at *1, *8, *19 (N.D. Ill. Sept. 15, 2021) (dismissing illegal entry claim because police had received reports of suicidal individual and no response to their knocks); *Parsons v. Velasquez*, 551 F. Supp. 3d 1085, 1197 (D.N.M. 2021) ("No reasonable jury could conclude other than

that exigent circumstances existed here, given that the Defendants reasonably believed that M. Parsons was experiencing a medical emergency . . . .").

At bottom, it would have been imprudent for the officers to allow the visibly agitated and intoxicated Torres to enter his house unsupervised where CPW Roy was carrying on the DHS investigation that had just prompted his wife's arrest. We have observed that police "routinely assist" DHS workers by ensuring their safety while they investigate. *State v. Kern*, 831 N.W.2d 149, 156 (Iowa 2013). That police duty continues until the children are removed from the home. *See id.* at 173–74. As noted, police have an affirmative grant of statutory authority to assist DHS workers in their investigations. *See* Iowa Code § 232.71B(3)(*a*). The safety of this DHS worker in particular was a reasonable concern to the officers: Roy, as a CPW, was a key player in the process that had resulted in the arrest of Torres's wife and threatened the removal of the children from his home. And there was more than a mere chance that Torres would encounter Roy—it was a certainty given DHS's duty to determine whether placement of the children with Torres himself would be suitable. *See id.* § 232.71B ("Duties of the department upon receipt of report."). It requires no stretch of the imagination to understand how that confrontation might take a turn for the worse. *See, e.g., Illinois Child Welfare Worker Fatally Stabbed During Home Visit; Suspect Charged with Murder*, NBC News (Jan. 6, 2022, 11:16 AM), https://www.nbcnews.com/news/us-news/illinois-child-welfare-worker-fatally-stabbed-home-visit-suspect-charg-rcna11160 [https://perma.cc/G8HE-R9GJ]. We agree with the district court

that "the officers would have been derelict in their duty to leave [Torres] unattended in this situation."

No officer entered Torres's home before he did. The officers did not enter the house to search or seize evidence but rather to safeguard CPW Roy and her investigation. Torres does not question her lawful authority. Police entered the home only after the visibly agitated and intoxicated Torres walked in and thereby created the exigency. Officers had no time to secure a warrant to follow Torres into the home. They did not need a warrant given their statutory duty to safeguard CPW Roy inside the home and given the exigency presented by his behavior.

We hold the officers' warrantless entry in the home under these exigent circumstances did not violate Torres's rights under the Fourth Amendment or article I, section 8 of the Iowa Constitution.

### IV. Disposition

For the foregoing reasons, we affirm the decision of the court of appeals and the judgment of the district court.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Christensen, C.J., and Mansfield, Oxley, and McDermott, JJ., join this opinion. McDonald, J., files a special concurrence. May, J., takes no part.

**McDONALD, J. (concurring specially)**

I concur in the judgment. I write separately because I would not reach the question of whether the officers' warrantless entry into the home was legally justified under the community caretaking doctrine.

Torres did not raise this issue in his main brief. The appellant's failure to raise an issue in his main brief constitutes forfeiture of the issue. *Morris v. Steffes Grp., Inc.*, 924 N.W.2d 491, 498 (Iowa 2019) (holding "unbriefed issues" were waived); *State v. Seering*, 701 N.W.2d 655, 661–62 (Iowa 2005) (holding party waived issues on appeal even though issues were preserved in district court because issues were not presented in brief), *superseded by statute on other grounds*, 2009 Iowa Acts ch. 119, § 3 (codified at Iowa Code § 692A.103 (Supp. 2009)); *Goodenow v. City Council*, 574 N.W.2d 18, 27 (Iowa 1998) (declining to address issue where plaintiffs did not raise issue "in their initial brief"); *Parkhurst v. White*, 118 N.W.2d 47, 49 (Iowa 1962) (holding party waived issue not argued on appeal); *Am. Mut. Liab. Ins. v. State Auto. Ins.*, 72 N.W.2d 88, 93 (Iowa 1955) (declining to express opinion on issue not raised).

Nor did Torres raise this issue in his reply brief. In his reply brief, Torres noted that the State relied on *Caniglia v. Strom*, 141 S. Ct. 1596 (2021). His position, however, was that "**the analysis in *Caniglia* is not relevant to this case.**" (Emphasis added.) Contrary to the majority's contention, Torres never argued that *Caniglia* or the community caretaking doctrine were relevant in this

appeal. To resolve this appeal, we need only address the issues actually presented.

It is not clear Torres even raised this issue in his application for further review. Torres's position on further review is that he "was seized shortly after he arrived at the scene." During oral argument, Torres's counsel stated he was not challenging the entry into the home, as such, but the seizure of his client upon arriving at the scene. Setting that aside, even if Torres had raised this issue in his application for further review, this court generally does not address issues raised for the first time on further review. *See, e.g.*, *State v. Warren*, 955 N.W.2d 848, 867 (Iowa 2021) ("We generally will not consider issues raised for the first time in a reply brief in an appeal, let alone in an application for further review." (quoting *State v. Schackford*, 952 N.W.2d 141, 147–48 (Iowa 2020))); *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 711–12 (Iowa 2016) (declining to address issue raised for first time on further review); *Richardson v. Commodore, Inc.*, 599 N.W.2d 693, 696 n.2 (Iowa 1999) ("Richardson argued for the first time in his application for further review that the doctrine of res ipsa loquitur applies. We do not consider this issue because it was not timely raised."), *abrogated on other grounds by Koenig v. Koenig*, 766 N.W.2d 635 (Iowa 2009). Issues raised for the first time on further review should be left "to another case and another day." *Shackford*, 952 N.W.2d at 148 (quoting *State v. Gross*, 935 N.W.2d 695, 704 (Iowa 2019)).

Rather than reaching out to resolve an issue adversely to the defendant when he specifically argued that the issue was not relevant to this appeal, I would follow our precedents and decline to resolve the issue.